**SIERRA CLUB, et al., Plaintiffs,**

v.

**Carol M. BROWNER, et al. Defendants.**

**No. Civ. A. 98–2733(CKK).**

United States District Court, District of Columbia.

Jan. 29, 2001.

---

Lewis C. Green, Green, Hennings & Henry, St. Louis, MO, Joseph Mendelson, III, International Center for Technology Assessment, Washington, DC, Douglas R. Williams, St. Louis University School of Law, St. Louis, for Plaintiffs.

Eileen McDonough, U.S. Dept. of Justice, Environment and Natural Resources Division, Kendra Sagoff, U.S. Environ-

ment Protection Agency, Office of General Counsel, Washington, DC, Robert Patrick, Office of Regional Counsel, Kansas City, for Defendant.

Jeremiah W. Nixon, Attorney General, James Robert Layton, Joseph P. Bindbeutel, Timothy Duggan, Jefferson City, MO, for Intervenor State of Missouri.

James E. Ryan, Attorney General, Matthew J. Dunn, Thomas Davis, Office of the Attorney General, Springfield, IL, for Intervenor State of Illinois.

Jeffrey R. Gans, Douglas L. Patin, Washington, DC, Bradley S. Hiles, David R. Erickson, Blackwell Sanders Peper Martin, St. Louis, MO, for AIM–AGC Intervenors.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Seeking relief under the Clean Air Act, 42 U.S.C. § 7401 *et seq.* (CAA), Plaintiffs Sierra Club and Missouri Coalition for the Environment filed two separate complaints alleging that Defendant Carol M. Browner, Administrator of the Environmental Protection Agency, had failed to enforce the Act and perform nondiscretionary statutory duties.[1] These duties include publication of notice in the Federal Register identifying the St. Louis Nonattainment Area as a region that has failed to attain the applicable standards for ozone pollutants and approval or disapproval of Missouri's revisions to its state implementation plan (SIP) for reducing volatile organic compound emissions.

On January 28, 2000, the Court dismissed one complaint altogether, *see* Order Granting EPA's Mot. to Dismiss, No. 99–388 (Jan. 28, 2000), and dismissed five of the seven counts contained in the other. *See* Order Granting in Part and Holding in Abeyance in Part EPA's Mot. for Partial J. on the Pleadings, No. 99–2733 (Jan. 28, 2000).[2] Although dispositive motions relating to the other two counts were pending as well, the Court held them in abeyance to allow potential intervenors an opportunity to brief pertinent issues. *See id.* On February 2, 2000, the Court allowed three additional parties to intervene in the surviving suit and invited them to promptly file responses, if any, opposing or supporting the pending dispositive motions. *See* Intervention Order, No. 98–2733 (Feb. 2, 2000).[3]

A variety of motions are currently pending before the Court in the surviving case. First, EPA requests dismissal of Count II for reasons of mootness. *See* EPA's Mot. to Dismiss Count II; EPA's Mem. in Supp. of Mot. to Dismiss Count II. Sierra Club opposes the motion, *see* Pls.' Mem. in Opp'n to EPA's Mot. to Dismiss Count II, and EPA has filed a reply. *See* EPA's Reply Mem. in Supp. of Mot. to Dismiss Count II. Upon consideration of the pleadings and the applicable law, the Court shall grant the motion to dismiss the count. Second, Sierra Club asks the Court to modify its January 28, 2000, rulings in two respects. *See* Pls.' Mot. for Modification of Op. & Order ¶¶ 2–6. EPA opposes the request. *See* EPA's Opp'n to Pls.' Mot. for Modification of Op. & Order. Upon review of the pleadings and in light of the Court's decision with respect to Count II, the Court shall grant the motion to modify in part and deny it in part. Finally, the Sierra Club and EPA have submitted

---

1. For convenience, the Court refers to the Plaintiffs as "Sierra Club" and the Defendant as "EPA".

2. The Court dismissed Counts III, IV, V, VI and VII.

3. The Court permitted the State of Missouri and the State of Illinois to intervene as independent entities. It also permitted a group of industry associations to intervene and re-

quired them to file all future pleadings jointly. That group, which the Court refers to as the "AIM/AGC Intervenors," includes the Associated Industries of Missouri; the Associated General Contractors of Missouri, Inc.; the Associated General Contractors of St. Louis; and the Heavy Contractors Association of Greater Kansas City. *See* Intervention Order, No. 98–2733 (Feb. 2, 2000).

cross-motions for summary judgment on Count I. Upon consideration of the thorough briefing supplied by the parties and the intervenors,[4] the Court shall grant summary judgment and order the relief described in this opinion.[5]

## I. EPA'S MOTION TO DISMISS COUNT II

■ The Court turns first to EPA's motion to dismiss Count II in its entirety.[6] In that count, Sierra Club argues that EPA failed to perform its non-discretionary duty of approving or disapproving Missouri's proposed SIP within the time period required by section 110(k)(2) of the Clean Air Act. *See* Compl. ¶¶ 48–51 (citing 42 U.S.C. § 7410(k)(2)). Arguing that Missouri's proposal was deficient in several respects, Sierra Club asks the Court to issue a declaratory judgment stating, *inter alia*, that the proposal does not satisfy the pertinent legal requirements, that EPA failed to act within the statutory time period, and that such inaction amounts to a constructive disapproval. *See id.* at 16–17, subpara. 1. Additionally, Sierra Club seeks an order requiring EPA to detail the defi-

---

4. In assessing the cross-motions, the Court has evaluated the following pleadings: Pls.' Mot. for Summ. J. on Count I (and accompanying statement of facts and memorandum of points and authorities); EPA's Cross–Mot. for J. on Remedy Under Count I (and accompanying statement of facts and memorandum); Pls.' Reply Mem. in Supp. of Pls.' Mot. for Summ J. on Count I and in Opp'n to EPA's Cross Mot. for J. on Remedy; EPA's Reply Brief in Supp. of Cross–Mot. for Summ. J. on Count I of the Compl.; EPA's Notice of Potential Subsequent Dev. Relevant to EPA's Cross–Mot.; EPA's Second Notice of Potential Subsequent Dev.; Pls.' Response to EPA's Notice of Potential Subsequent Dev.; EPA's Revised Schedule and Reply to Pls.' Response to EPA's Second Notice of Subsequent Dev.; Pls.' Response to EPA's Revised Schedule; State of Missouri's Responses to Pending Dispositive Mots. Filed by the Parties (and accompanying statement of facts); Illinois' Response to Pls.' Mot. for Summ. J. on Count I & Illinois Cross–Mot. for Summ. J. on Count I Remedy (and accompanying statement of facts and memorandum); AIM/AGC Intervenors' Mot. to Dismiss and/or Strike for Lack of Subject Matter Jurisd.; AIM/AGC Intervenors' Mem. of P. & A. in Response to Dispositive Mots. on Counts I & II (and accompanying statement of facts); Pls.' Mem. of P. & A. in Opp'n to Mot. to Dismiss and/or Strike of AIM/AGC Intervenors; AIM/AGC Intervenors' Reply Mem. to Pls.' Mem. of P. & A. in Opp'n; EPA's Response to Memoranda Filed by Intervenors on Counts I & II; Pls.' Reply to Intervenors' Responses to Pending Dispositive Mots. on Counts I & II; EPA's Notice of Relevant Decision; EPA's Mot. for Leave to File Supplemental Decls.; Pls.' Response to EPA's Mot. for Leave to File Supplemental Decls.

5. In its treatment of the cross-motions for summary judgment with respect to Count I, the Court also resolves the State of Illinois'

motion for summary judgment as to remedy and the AIM/AGC Intervenors' motion to dismiss and/or strike for lack of subject matter jurisdiction.

6. EPA's motion neglects to indicate which Federal Rule applies to this request for dismissal. Because the motion essentially targets this Court's jurisdictional competence to consider this matter, however, the Court shall construe it as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See In re Kurtzman*, 194 F.3d 54, 58 (2d Cir.1999) ("When a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (internal citations and alterations omitted). In reviewing motions to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), district courts employ a standard similar to that used for 12(b)(6) motions. *See, e.g., Vanover v. Hantman*, 77 F.Supp.2d 91, 98 (D.D.C.1999) (citing *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F.Supp.2d 15, 19 (D.D.C.1998)). In the 12(b)(1) context, the plaintiff bears the burden of proving jurisdiction. *See id.* Under 12(b)(6), as well as under 12(b)(1), a motion to dismiss should be granted only if the "plaintiff[ ] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994) (citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979)). When considering a motion to dismiss, the Court must resolve all factual doubts in favor of the plaintiff and allow the plaintiff the benefit of all inferences. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir. 1997). In its consideration of a motion under 12(b)(1), a district court may look beyond the pleadings to inquire into facts pertinent to its jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

ciencies in the proposal and formally disapprove it. *See id.* at 17, subpara. 2.

In its motion to dismiss the count, EPA argues that the CAA allows this Court to grant relief only by requiring EPA to take the non-discretionary step of approving or disapproving the SIP. *See* EPA's Mem. in Supp. of Mot. to Dismiss Count II at 3. Noting that EPA approved a revised SIP for Missouri since the initiation of this suit, EPA contends that there is no further relief that this Court may grant, regardless of the underlying merits. *See id.* at 3–4. According to EPA, after the agency has taken the mandatory step of approving or disapproving a plan, parties seeking to overturn the decision are statutorily required to commence such challenges in the federal court of appeals that covers the region in question. *See id.* at 4. Thus, EPA maintains, this Court has no power to assess the substantive validity of EPA's decision to approve the Missouri SIP. When a court has no power to grant relief, EPA contends, the case is moot, the controversy is not live within the meaning of Article III, and the court lacks jurisdiction to consider the matter. *See id.* at 3–4; EPA's Reply Mem. in Supp. of Mot. to Dismiss Count II at 2. Without disputing the thrust of EPA's argument, Sierra Club maintains that dismissal of Count II is inappropriate because the time for appellate court review of EPA's substantive decision has not expired. *See* Pls.' Mem. in Opp'n to EPA's Mot. to Dismiss Count II at 1–2.

Sierra Club's suit, including Count II, arises under 42 U.S.C. § 7604(a)(2), which grants a private right of action against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2); *see* Compl. ¶ 2. The Court's power to grant relief in such suits is limited to "order[ing]

the Administrator to perform such act or duty [or] compel[ling] ... agency action unreasonably delayed." 42 U.S.C. § 7604(a). In other words, this Court's power is limited to requiring EPA to undertake the nondiscretionary duty at issue. In this case, that duty involves the timely approval or disapproval of Missouri's SIP proposal within the statutory time period. *See* 42 U.S.C. § 7410(k)(2) ("the Administrator *shall* act on the submission" within twelve months of a determination that the plan meets general completeness criteria) (emphasis added).

As EPA notes in its motion, the agency has now taken that nondiscretionary step. *See* EPA's Mem. in Supp. of Mot. to Dismiss Count II at 3–4. On May 18, 2000, it published a notice in the Federal Register approving a revised SIP submitted by Missouri. *See* 65 Fed.Reg. 31,485. Since the Court's power is limited to ordering EPA to take nondiscretionary action, and since EPA has taken that action by approving the Missouri SIP, the Court is without power to grant meaningful relief with regard to Count II. In its opposition, Sierra Club appears to dispute the logic and validity of EPA's decision to approve the SIP. *See* Pls.' Mem. in Opp'n to EPA's Mot. to Dismiss Count II at 1. However, as EPA argues, this Court is precluded from assessing the substance of the agency's decision. Such review is reserved for the federal court of appeals responsible for the region covered by the particular SIP. *See* 42 U.S.C. § 7607(b)(1); *Navistar Int'l Transp. Corp. v. EPA,* 941 F.2d 1339, 1341 (6th Cir.1991) ("The EPA's determination is a final agency action subject to judicial review in the courts of appeals under [42 U.S.C. § 7607(b)(1) ].").[7]

Because the Court is unable to grant any relief beyond requiring steps that EPA has already taken, Count II is moot. *See Burlington N.R.R. Co. v. Surface Transp. Bd.,* 75 F.3d 685, 688 (D.C.Cir.

---

7. EPA contends, and Sierra Club does not dispute, that the Missouri SIP at issue in Count II covers territory within the Seventh Circuit and the Eighth Circuit. *See* EPA's Mem. in Supp. of Mot. to Dismiss Count II at 4 n.4.

1996) (citing Church of Scientology v. United States, 506 U.S. 9, 11, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)) As such, Count II does not present a live case or controversy as required by the Constitution. See id. ("Article III confines federal courts to the resolution of actual cases or controversies, and thus prevents their passing on moot questions—ones where intervening events make it impossible to grant the prevailing party effective relief."). Because Count II does not satisfy this threshold constitutional requirement, this Court lacks authority to consider it.

█ As noted, Sierra Club opposes EPA's motion with the argument that dismissal would be premature because the appropriate court of appeals may yet have occasion to rule on the validity of EPA's action. This argument is unavailing because it attempts to root this Court's jurisdiction in the speculative possibility that a final agency action will be overturned. The Court, which must remain vigilantly aware of its constitutional limitations, assesses the contours of its jurisdictional reach with respect to the actual, non-speculative facts before it. If a controversy is not actual and live, the Court is without jurisdiction to entertain the matter, even if it is possible that some later, independent action may dispel any mootness. Accordingly, in light of the Court's jurisdictional limitations with regard to Count II, the Court shall dismiss it pursuant to Rule 12(b)(1).

## II. SIERRA CLUB'S MOTION TO MODIFY

In its motion to modify, Sierra Club asks the Court to revise its January 28, 2000, Memorandum Opinion and Order in two respects. First, Sierra Club notes that the Court ordered that the then-pending motion for partial judgment would be held in abeyance with respect to Count I. See Pls.' Mot. for Modification or Op. & Order ¶ 2. The parties agree, as does the Court, that the partial judgment motion in question did not seek judgment with regard to Count I. See id.; EPA's Opp'n to Pls.' Mot. for Modification of Op. & Order at 2. In other words, the Court's inadvertent inclusion of Count I in its Order was a mistake. Neither party contends that this mistake has impacted this litigation in any sense. The Court shall rectify it by ordering an amendment of its January 28, 2000, Order that deletes reference to Count I.

In its second request, Sierra Club asks the Court to reinstate Count VI, which the Court dismissed along with Counts III, IV, V and VII in its January 28, 2000, Memorandum Opinion and Order. See Pls.' Mot. for Modification or Op. & Order ¶ 2. Count VI requests the imposition of sanctions stemming from the violations described in Counts II, III, IV and V. See id. ¶ 3. In the January 28, 2000, Memorandum Opinion, the Court determined that EPA was entitled to judgment with respect to Counts III, IV and V, and therefore reasoned that Count VI, which contained a derivative request for sanctions, should be dismissed as well. See January 28, 2000, Mem. Op. at 5–6. As Sierra Club notes, however, the Court did not render judgment with respect to Count II. See Pls.' Mot. for Modification or Op. & Order ¶ 4. Therefore, since Count VI was at least partially derivative of the allegations contained in Count II, the Court should not have disposed of Count VI altogether. See id. ¶¶ 5–6.

While Sierra Club's reasoning is sound,[8] the argument is moot in light of the deci-

---

8. Without disputing the logic of Sierra Club's argument, EPA contends that the Court should have dismissed Count VI in its January 28, 2000, Order on other grounds. See EPA's Opp'n to Pls.' Mot. for Modification of Op. & Order at 3–4. Specifically, rather than rely on the derivative nature of the claims, EPA contends that the Court should have disposed of Count VI because it seeks relief outside of the scope of the Clean Air Act and because EPA's duty to impose the sanctions described in Count VI was never triggered. See id. Because the Court decides not to reinstate Count VI in light of its ruling with regard to Count II, it shall not assess the validity of

sion regarding Count II enunciated in this opinion. As previously described, the Court shall dismiss Count II because it does not present a justiciable case or controversy as required by Article III. Thus, taken together, this opinion and the Court's opinion issued on January 28, 2000, dispose of Counts II, III, IV and V. Since Count VI is purely derivative of those dismissed counts and no others, reinstating it at this point in the litigation would be futile. Accordingly, to the extent that Sierra Club's motion seeks reinstatement of Count VI, the motion shall be denied as moot.

## III. CROSS MOTIONS ON COUNT I

Following the Court's disposition of Counts III, IV, V, VI and VII on January 28, 2000, and its dismissal of Count II today, all that remains of Sierra Club's complaint is Count I. In that count, Sierra Club asserts that EPA has failed to perform nondiscretionary duties pertaining to the efforts of the air quality control region around St. Louis to comply with air quality standards for ozone. In particular, Sierra Club contends that although EPA has determined that the St. Louis Nonattainment Area (NAA) has failed to meet the standards, it has not undertaken the nondiscretionary steps that flow from that determination. Sierra Club seeks summary judgment with respect to this Count.[9] In a cross-motion, EPA concedes failure to perform nondiscretionary duties, but proposes relief different from that requested by Sierra Club. Each of the intervenors argues that the Court should award the relief proposed by EPA.

Rule 56(c) of the Federal Rule of Civil Procedure requires a court to grant judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Tao v. Freeh, 27 F.3d 635, 638 (D.C.Cir.1994). Although the court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party's pleadings must evince the existence of a genuine issue of material fact. See id. at 247–48, 106 S.Ct. 2505.

To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party. See id.; Laningham v. United States Navy, 813 F.2d 1236, 1242–43 (D.C.Cir.1987). Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. Rather, the nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial. See id. at 1248–49. The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. Pertinent Facts and Statutory Scheme

Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the

EPA's alternative arguments for the disposition of Count VI.

**9.** Sierra Club brings its entire action, including Count I and the motion for summary judgment, under CAA section 304(a)(2), which allows for a private right of action in which a plaintiff may seek a court order requiring EPA to fulfill nondiscretionary duties under the statute. See Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 15; 42 U.S.C. 7604(a)(2).

public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). In keeping with that statutory purpose and the Act's more specific requirements, EPA has developed National Ambient Air Quality Standards (NAAQSs) for a variety of pollutants, including ozone. *See* 42 U.S.C. §§ 7408(a)(1)(A), 7409(b)(1); 36 Fed Reg 8189 (April 30, 1971) (first NAAQS promulgated for ozone). Under the EPA's revised NAAQS for ozone that currently covers St. Louis and the surrounding area,[10] the region is in violation if its hourly average concentration of ozone exceeds 0.12 parts per million more than one time each year. *See* 36 Fed Reg 8189 (April 30, 1971); 44 Fed Reg 8202 (February 8, 1979). The CAA requires states to develop SIPs outlining the steps to be undertaken to bring a particular NAA's air quality into compliance with the applicable standard. *See* 42 U.S.C. § 7410(a)(1).

Congress amended the CAA in 1990, in part in order to "revise the timing and content of the SIP requirements and provide new incentives and sanctions to encourage state compliance." *Natural Resources Defense Council v. Browner*, 57 F.3d 1122, 1123 (D.C.Cir.1995). The amendments required the EPA to place each NAA into one of five categories of attainment depending on the region's air quality as of November 15, 1990. They also required that, in its preparation of a SIP describing plans to reduce the concen-

tration of pollutants, a state must meet particularized requirements depending on the NAA's categorization. *See* 42 U.S.C. §§ 7511, 7511a.

In keeping with the 1990 amendments, on November 6, 1991, the EPA Administrator published notice in the Federal Register categorizing the St. Louis NAA as "moderate." *See* Sierra Club's Statement of Material Facts ¶ 20; EPA's Statement of Material Facts at 10; 56 Fed.Reg. 56,694 (Nov. 6, 1991). Accordingly, pursuant to 42 U.S.C. § 7511(a)(1), the St. Louis NAA was statutorily required to satisfy the prescribed ozone standards no later than November 15, 1996, the applicable attainment date. *See* 42 U.S.C. § 7511(a)(1); Sierra Club's Statement of Material Facts ¶ 21; EPA's Statement of Material Facts at 10.

Section 7511(b)(2)(A) required EPA to determine, within six months of that attainment date, whether the NAA had complied.[11] A determination of nonattainment would automatically bump the NAA to the next higher classification, in this case "serious," by operation of law. *See* 42 U.S.C. § 7511(b)(2)(A)(i). Within the same six month period after the attainment date, EPA was required to publish a notice in the Federal Register identifying any NAAs that had failed to attain and identifying resulting reclassifications. *See* 42 U.S.C. § 7511(b)(2)(B).

---

10. In its complaint and much of its briefing, Sierra Club asks the Court for declaratory and injunctive relief pertaining to the St. Louis Air Quality Control Region (ACQR). *See, e.g.*, Compl. ¶ 1. As the State of Illinois observes, however, the nondiscretionary duties covered in the Clean Air Act govern the St. Louis Nonattainment Area (NAA), not the ACQR. *See* Illinois' Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I & in Supp. of Cross–Mot. for J. on Remedy at 1 n.2, 23–24. In its reply to the intervenors' briefings, Sierra Club concedes that the NAA is the proper geographical unit and agrees that "any relief should be limited to the nonattainment area." Pls.' Reply to Intervenors' Responses to Pending Dispositive Mots. on Counts I & II at 2 n.1. In light of Sierra Club's concurrence in

this regard, the Court shall limit its consideration to the NAA.

11. In pertinent part, section 7511(b)(2)(A) provides as follows:

Within 6 months following the applicable attainment date (including any extension thereof) for an ozone nonattainment area, the Administrator shall determine ... whether the area attained the standard by that date.... [A]ny area that the Administrator finds has not attained the standard by that date shall be reclassified by operation of law [to]—

(i) the next higher classification for the area.

42 U.S.C. § 7511(b)(2)(A).

In October 1996, the Missouri Department of Natural Resources (MDNR) informed EPA that the St. Louis NAA would not meet the relevant standards by the attainment date of November 15, 1996. *See* Sierra Club Statement of Material Facts ¶¶ 22, 23, Ex. 1 (letter from MDNR to EPA). MDNR accordingly sought a one-year extension, which EPA has never subsequently granted. See Sierra Club Statement of Material Facts ¶¶ 22, 23, Ex. 1; EPA Statement of Material Facts at 10–11; Answer ¶ 32.

According to Sierra Club, the St. Louis NAA has remained in violation of the applicable NAAQS for ozone ever since its was designated a moderate area in 1991. *See* Sierra Club's Statement of Material Facts ¶ 24–29, 33, 34. Sierra Club also asserts that EPA has determined, as required by the statute, that the St. Louis NAA is in violation. *See id.* EPA denies that it has ever formally reached such a conclusion. *See* EPA's Statement of Material Facts at 11–13.

Notwithstanding their dispute over whether EPA has reached the statutorily required determination, EPA and Sierra Club agree that EPA has not yet fulfilled its nondiscretionary duty to publish, no later than May 15, 1997, a notice in the Federal Register relating to the NAA's attainment status and resulting reclassification. *See* Sierra Club's Statement of Material Facts ¶¶ 31–32; EPA's Statement of Material Facts at 13–14; 42 U.S.C. § 7511(b)(2)(B).

### B. Sierra Club's Motion and Request for Relief

Notwithstanding EPA's protestations to the contrary, Sierra Club asserts that EPA has determined, through a variety of statements, rulings, and proposed rules, that the St. Louis NAA failed to attain the ozone standards applicable to "moderate" regions. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 10–11; Sierra Club Statement of Material Facts ¶¶ 25–33. Sierra Club asserts that this determination satisfies the nondiscretionary requirements of 42 U.S.C. § 7511(b)(2)(A), but that EPA has not taken the subsequent, nondiscretionary actions required by the statute. In particular, Sierra Club maintains that EPA has not, as required, published notice in the Federal Register indicating that the St. Louis NAA failed to attain and that, as a result of the nonattainment, the NAA was automatically bumped up to the "serious" category by operation of law. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 12; 42 U.S.C. § 7511(b)(2)(B). Sierra Club further contends that the State of Missouri has failed to file SIPs reflecting that automatic reclassification to the "serious" category even though such SIPs are required by 42 U.S.C. § 7509(d)(1). Rather, argues Sierra Club, EPA has improperly decided to treat Missouri and the St. Louis NAA in a soft-gloved, discretionary manner that finds no support in the statute or in the EPA's treatment of similarly situated NAAs. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 12.

Sierra Club points to two non-discretionary duties that, it asserts, EPA has failed to undertake. First, contends Sierra Club, EPA has failed to perform its nondiscretionary duty to publish notice by May 15, 1997, stating its conclusion that the St. Louis NAA failed to attain the ozone NAAQS by November 15, 1997, and remains in non-compliance. Second, Sierra Club argues that EPA has failed to publish notice by May 15, 1997, stating that the NAA was reclassified as "serious" as a result of its nonattainment. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 17 (citing 42 U.S.C. § 7511(b)(2)(A)-(B)).[12] Sierra Club asserts

---

**12.** Section 7511(b)(2)(B) provides that

The Administrator shall publish a notice in the Federal Register, no later than 6 months following the attainment date, identifying each area that the Administrator has determined under subparagraph (A) as hav-

that the statute's use of the word "shall" demonstrates that these duties are nondiscretionary. *See id.; Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (holding that the word "shall" in an act of Congress indicates a course of conduct "of an unmistakably mandatory character"), *overruled in non-pertinent part by Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In light of EPA's alleged failure to undertake its nondiscretionary duties, Sierra Club seeks an array of declaratory and injunctive relief. In particular, Sierra Club requests (1) a declaration that the St. Louis NAA failed to attain the required ozone standards by November 15, 1996, and that it is still not in compliance; *see* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 20; (2) a declaration that, as of May 15, 1997, the St. Louis NAA was reclassified as "serious" by operation of law; *see id.* at 20–28; (3) a declaration that the requirements for "serious" regions, enumerated in 42 U.S.C. § 7511a(c), apply to the St. Louis NAA; *see id.* at 28–29; (4) a declaration that the State of Missouri has failed to file a SIP revision that comports with the requirements of section 7511a(c) by the statutory deadline of May 15, 1998; *see id.* at 29–32 (citing 42 U.S.C. § 7509(d)(1)); (5) an order requiring EPA to publish notice of the NAA's nonattainment and the resulting reclassification; *see id.* at 32; and (6) an order requiring that the notice be published *nunc pro tunc* as of the statutorily imposed deadline of May 15, 1997; *see id.* at 33–36 (citing 42 U.S.C. § 7511(b)(2)(B)).

## C. EPA's Cross–Motion

Readily conceding that it has not taken all of the nondiscretionary steps required by the CAA, EPA agrees that summary judgment is appropriate. *See* EPA's Cross–Mot. for J. on Remedy Under Count I; EPA's Mem. in Opp'n to Pls.'

Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 9. Contrary to Sierra Club's assertions, however, and notwithstanding the statute's imposition of a clear and mandatory deadline, EPA argues that it has not yet reached any final determination with regard to whether the St. Louis NAA has attained the requisite standards. *See* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 9.

EPA contends that Sierra Club's requested remedy is inappropriate in two respects. First, EPA maintains that the CAA severely limits the relief that the Court may grant in citizen suits like this one. Because the statute only allows the Court to "order the Administrator to perform [a non-discretionary] act or duty," 42 U.S.C. § 7604(a), EPA contends that the Court lacks the authority to reach substantive conclusions and grant the declaratory relief that Sierra Club requests. *See* EPA's Cross–Mot. for J. on Remedy Under Count I; EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 10–13.

Second, EPA argues that Sierra Club is not entitled to an order requiring *nunc pro tunc* publication. *See id.* at 21–22. Rather, EPA argues that the Court should order it to undertake its nondiscretionary duties, but that the order should allow the agency adequate time to consider the closely related issue of pollution derived from upwind sources. *See id.* at 23. EPA notes that it has issued a final rule, known as the "NOx SIP Call Rule," that aims to account for upwind sources of pollution in an NAA's effort at attainment. As EPA notes, the Court of Appeals for the District of Columbia Circuit has largely accepted the rule as valid. *See* EPA's Notice of Relevant Decision; *Michigan v. EPA,* 213

---

ing failed to attain and identifying the re-classification, if any, described under subparagraph (A).

42 U.S.C. § 7511(b)(2)(B).

F.3d 663 (D.C.Cir.2000).[13] In keeping with the rule, and with a subsequent D.C. Circuit order delaying upwind implementation measures by more than a year, EPA asks the Court for an order that does not require a determination and publication related to the St. Louis NAA until June 29, 2001, or, if the pertinent SIPs are inadequate, until June 22, 2002. *See* EPA's Mot. for Leave to File Supplementary Declarations Ex. 1 at 5–6 (statement of William A. Spratlin).

## D. Intervenors' Submissions [14]

The State of Missouri joins EPA in arguing that, in the event of summary judgment, the Court should exercise its equitable powers and order the agency to undertake its nondiscretionary duties under the flexible schedule that EPA proposes. *See* State of Missouri's Responses to Pending Dispositive Mots. Filed by the Parties at 4.[15] Like EPA, Missouri objects to Sierra Club's request for *nunc pro tunc* relief. Sierra Club maintains that such retroactive relief would upset the CAA's judicial review mechanisms because applicable appeals deadlines will have long since passed. *See id.* at 5.

The State of Illinois also endorses EPA's request for an order that imposes the non-statutory schedule that EPA has suggested. *See* Illinois' Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 1–2, 23–29. Further, Illinois contends that the CAA limits the type of relief that the Court is empowered to order and that *nunc pro tunc* relief is not fitting in this case. *See id.* at 15–23, 29–38.

In a combined brief, the AIM/AGC intervenors contend that review pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), supports the conclusion that EPA has not reached a final determination with regard to the St. Louis NAA's attainment. *See* AIM/AGC Intervenors' Mem. of P. & A. in Response to Dispositive Mots. on Counts I & II at 22–28. Like EPA and the other intervenors, the AIM/AGC intervenors also assert that the Court's authority is limited to ordering EPA to undertake its nondiscretionary duties. *See id.* at 21–22. They, too, contend that the Court should fashion an equitable remedy like that proposed by

---

**13.** In *Michigan v. EPA,* the Court of Appeals for the District of Columbia Circuit considered several petitions for review of the final Nox SIP Call Rule. *See Michigan v. EPA,* 213 F.3d at 663. As EPA notes, the court denied all but three of the petitions. The three that it remanded to EPA for further consideration related to (1) the application of the rule to Wisconsin, Missouri and Georgia, (2) "notice of a change in the definition of an electric generating unit," and (3) "notice of a change in the control level assumed for large stationary internal combustion engines." *Id.* at 695. None of these directly relates to the application of the rule in this case. While one of the granted petitions relates to Missouri, it addresses Missouri's status as an upwind polluter. Therefore, the petition does not affect the degree to which the St. Louis NAA may benefit from the rule's application to states upwind from Missouri.

**14.** Each of the intervenors briefed the dispositive motions relating to Counts I and II. Because the Court disposes of Count II on jurisdictional grounds, it does not expressly address the intervenors' arguments that pertain thereto.

**15.** The State of Missouri begins its brief in response with the argument that summary judgment with respect to a remedy is inappropriate at this stage because facts material to the remedies proposed by Sierra Club and EPA remain in dispute. *See* State of Missouri's Responses to Pending Dispositive Mots. Filed by the Parties at 3. As demonstrated more fully in the discussion section, the Court disagrees. The remedy that the Court may provide is dictated by the CAA. While some factual issues remain in dispute, particularly with regard to the harm that pollutants continue to cause in the St. Louis area, none of them affects the statutorily required remedy.

The facts of this particular dispute do impact the *timing* of the statutorily prescribed relief. As described below, however, the Court concludes that there are no genuine issues with respect to facts pertinent to the remedy's timing. Accordingly, judgment and an order granting relief are appropriate.

EPA. *See id.* at 34–40.[16]

### E. Discussion

As described in the Court's discussion of its jurisdiction to consider Count II, the CAA expressly limits the relief that district courts may afford in citizen suits like this one. Under 42 U.S.C. § 7604(a), the Court may grant no relief beyond "order[ing] the Administrator to perform [a non-discretionary] act or duty [or] compel[ling] . . . agency action unreasonably delayed." 42 U.S.C. § 7604(a). In other words, the Court's power is limited to requiring EPA to undertake nondiscretionary actions required by the statute.

■ In this case, EPA, Sierra Club, and the intervenors agree that EPA has never published notices pertaining to the St. Louis NAA's attainment, as the CAA requires. They also agree that EPA has never issued a *formal* determination regarding the NAA's attainment, as required by 42 U.S.C. § 7511(b)(2)(A). They disagree, however, about whether statements and conclusions other than a formal determination still qualify as a determination for purposes of the statute. They also disagree about the relief that the Court should properly award.

On the core issues pertaining to EPA's nondiscretionary duties, there are no disputed material facts. While the parties disagree, as a matter of law, about the proper definition of a "determination" for purposes of section 7511(b)(2)(A), they are in agreement as to the underlying facts that inform that question of law. Accordingly, the Court shall grant summary judgment and order relief. The remedy that the Court fashions, however, requires an assessment of EPA's actions and omissions to date, particularly with regard to the NOx SIP Call Rule. Importantly, the parties do not dispute that upwind pollutants impact downwind regions' efforts at attainment. Further, they do not dispute that EPA proposed and promulgated the NOx SIP Call Rule in an effort to address that impact. Additionally, they do not dispute that the Court of Appeals for the District of Columbia Circuit did not accept any petitions for review that challenge the rule's validity with respect to the St. Louis NAA's status as a downwind region. In light of the parties' general agreement on these issues, the Court is able to fashion the relief described in this opinion.

16. Additionally, the AIM/AGC intervenors argue *sua sponte* for dismissal of Count I on the theory that the Court lacks jurisdiction for two separate reasons. First, they contend, if the Court finds that EPA has already formally determined the St. Louis NAA's attainment status, then the CAA divests the Court of jurisdiction to assess subsequent statutory duties. *See* AIM/AGC Intervenors' Mot. to Dismiss and/or Strike for Lack of Subject Matter Jurisdiction ¶ 2 (construing 42 U.S.C. § 7607(b)(2)); AIM/AGC Intervenors' Mem. of P. & A. in Response to Dispositive Mots. on Counts I & II at 16–17. Without considering the merits of the argument, the Court denies it as moot because, as described in detail below, the Court determines that EPA has not yet reached a final determination.

Second, referring to the Court's limited jurisdiction under 42 U.S.C. § 7604(a)(2), the AIM/AGC intervenors contend that the attainment determination is "so infused with discretion that jurisdiction is not proper." AIM/AGC Intervenors' Mot. to Dismiss and/or Strike for Lack of Subject Matter Jurisdiction

¶ 3. The Court disagrees. As the intervenors themselves argue, "EPA may have a mandatory duty to take some action" with regard to a determination. AIM/AGC Intervenors' Mem. of P. & A. in Response to Dispositive Mots. on Counts I & II at 20. Thus, as the AIM/AGC intervenors' own logic demonstrates, the Court has jurisdiction to require that EPA make a determination. Quite plainly, the Court's jurisdiction does not extend to telling EPA what the determination should be. That limitation does not, however, eliminate the Court's jurisdiction altogether. Under the CAA, the Court unquestionably has the authority to require EPA to take nondiscretionary actions, such as reaching a determination. *See* 42 U.S.C. § 7604(a); *see also Environmental Defense Fund v. Thomas*, 870 F.2d 892, 894 (2d Cir.1989). EPA itself endorses this view of the statute. *See* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 10–11. Thus, to the extent that the AIM/AGC intervenors seek dismissal on this jurisdictional ground, the motion shall be denied.

### 1. Limitations on Court's Authority to Provide Relief

■ Preliminarily, the Court reiterates its limitations with respect to the relief available. Under the CAA, the Court can only order EPA to take nondiscretionary actions required by the statute itself. *See* 42 U.S.C. § 7604(a). The Act expressly limits the Court's authority in this regard and does not envision other types of relief. Notably, the CAA does not allow district courts to address the content of EPA's conduct, issue substantive determinations of its own, or grant other forms of declaratory relief. *See id.* Additionally, it does not empower the Court to mandate action by any entity other than the EPA itself. *See id.* Accordingly, the Court shall not grant the declaratory relief that Sierra Club seeks, especially since doing so would necessarily embroil the Court in an assessment of the substance of EPA's actions or omissions. Under 42 U.S.C. § 7607(b), such substantive judicial review is expressly reserved for the appropriate court of appeals.

### 2. Attainment "Determinations" and Chevron *Review*

While the Court cannot grant the requested declaratory relief in these circumstances, it is empowered to order EPA to take nondiscretionary actions. In this case, a variety of nondiscretionary actions are at issue. The first, and the one which serves as a lynchpin for the rest, is EPA's duty to determine, pursuant to 42 U.S.C. § 7511(b)(2)(A), whether the St. Louis NAA failed to meet the ozone standard by its attainment date, November 15, 1996. Such a determination would automatically reclassify the NAA as a "serious" region "by operation of law." *See* 42 U.S.C. § 7511(b)(2)(A). Sierra Club contends that EPA has effectively made this determination, as evidenced by a variety of letters, comments and publications issued since the deadline passed. EPA, on the other hand, concedes that it was required to make its determination by May 15, 1997,

yet it argues that it has not yet done so. Rather, EPA contends that the statute envisions public notice and comment before a determination and reclassification, and that fluctuations in policy and law pertaining to upwind polluters has delayed comment and the resulting determination. While EPA does not dispute that it has publicly noted the NAA's apparent nonattainment, it argues that those statements do not amount to a final determination because they were not informed by public notice and comment.

■ To resolve these competing interpretations of the statutory mandate, the Court reviews EPA's application of the CAA under the standard enunciated in *Chevron.* In order to determine whether EPA's interpretation of the statute is valid, the Court must ask whether "Congress has directly spoken to the precise question at issue;" if so, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1067 (D.C.Cir.1998). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *Mova,* 140 F.3d at 1067. So long as the agency's interpretation is "reasonable and consistent with the statute's purpose," the Court must defer to the agency's interpretation. *See Chemical Mfrs. Ass'n v. EPA,* 217 F.3d 861, 866 (D.C.Cir.2000) (quoting *Independent Ins. Agents of Am., Inc. v. Hawke,* 211 F.3d 638, 643 (D.C.Cir.2000)).

In this case, the statute clearly requires EPA to reach a determination and unambiguously commands reclassification "by operation of law" following a determination of nonattainment. *See* 42 U.S.C. § 7511(b)(2)(A). The statute is silent, however, with respect to what qualifies as a determination. EPA argues that the process of determination and reclassifica-

tion is effectively equivalent to a rule-making and that the statute therefore allows for public comment prior to finalization. Noting that there has not yet been public comment in this case, EPA argues that there has been no final determination. As noted, when the statute is silent with respect to a particular issue, the Court must defer to an agency's interpretation of the pertinent language as long as it is (1) reasonable and (2) consistent with the statute's purpose. *See Chemical Mfrs. Ass'n,* 217 F.3d at 866.

### a. Reasonableness

■■■ The Court finds that EPA's interpretation is reasonable for two principal reasons. First, as EPA argues, the statutory structure indicates a Congressional intent to require public notice and comment prior to reclassification. *See* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 15. Notably, the statutory provision relating to the *original* classification of NAAs includes a cross-reference to another provision which expressly states that such decisions are not subject to public notice and comment. *See* 42 U.S.C. § 7511(a)(3) (cross-referring to 42 U.S.C. § 7502(a)(1)(B)). Unlike the classification provision, however, the statute's *reclassification* provision omits the significant cross-reference. *See* 42 U.S.C. § 7511(b)(2). Where, as here, Congress includes an element in one portion of a statute yet excludes it in another comparable place, that exclusion is not to be considered accidental. *See Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Accordingly, the Court finds that EPA's construction of the statute is reasonable.

Second, EPA's view that the statute calls for public notice and comment is reasonable in light of the complex calculus entailed in reaching an attainment decision. *See* 40 C.F.R. pt. 50 app. H (de-scribing methodology for interpreting data pertinent to attainment). Coming to a final determination requires a review of a variety of variables for which an array of expertise is required. Not only must those variables be synthesized with one another in reaching the final conclusion, but EPA must also account for anomalies that may have affected and possibly distorted the data compiled. Additionally, the weighty reclassification consequence that results from a determination of non-attainment militates in favor of an interpretation that allows for a notice and comment period during which potentially affected parties can scrutinize the EPA's calculations.

Sierra Club contends that attainment determinations cannot qualify as rule-making that merits public notice and review because such determinations are purely factual and have no future effect. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 26 (citing Administrative Procedure Act, 5 U.S.C. § 551(4)); Pls.' Reply Mem. in Supp. of Pls.' Mot. for Summ. J. on Count I and in Opp'n to EPA's Cross–Mot. for J. on Remedy at 15–18. The Court disagrees. Far from amounting to a simple factual determination, the multiple assessments required to reach final conclusions leave substantial room for controversy, disagreement and unnoticed error. In parsing the data, reviewing its reliability and applicability, and reaching final conclusions, EPA regularly relies on input received as a result of public notice and comment. *See, e.g.,* 63 Fed.Reg. 8128 (Feb. 19, 1998) (describing notice and comment prior to final determination for Dallas–Ft. Worth); 62 Fed. Reg. 65,025 (Dec. 10, 1997) (describing notice and comment prior to final determination for Santa Barbara). Furthermore, the ultimate determination has weighty future effect. If EPA determines that a region fails to attain the applicable standards, it is automatically reclassified at the next higher level. *See* 42 U.S.C. § 7511(b)(2)(A). Such reclassification car-

ries with it a host of new statutory attainment requirements. *See* 42 U.S.C. § 7511a(c).

### b. Consistence with Purpose

The Court also finds that EPA's construction of attainment determinations is consistent with the purpose of the Clean Air Act. The statute envisions "the development of cooperative Federal, State, regional, and local programs" in order to "encourage and assist the development and operation of regional air pollution prevention and control programs." 42 U.S.C. § 7401(a)(4), (b)(4). Additionally, "[a] primary goal of [the CAA] is to encourage or otherwise promote reasonable Federal, State, and local governmental actions ... for pollution prevention." 42 U.S.C. § 7401(c). Allowing for public notice and comment prior to reaching attainment and reclassification decisions honors Congress' intent to ensure that local communities play a role in informing the federal agency prior to ultimate decisions and actions.

In sum, the Court finds that EPA's interpretation and application of the CAA provision pertaining to attainment determinations and reclassification is reasonable and consistent with the statutory purpose. As instructed by D.C. Circuit in *Chemical Manufacturers Association*, the Court defers to the agency and concludes that EPA has not yet issued the formal determination that section 7511(b)(2)(A) requires. *See Chemical Mfrs. Ass'n*, 217 F.3d at 866.[17] In light of the nondiscretionary nature of that duty, however, the Court shall enter an order requiring EPA to issue a final determination on the St. Louis NAA's attainment and to undertake any other nondiscretionary duties, such as publica-

tion in the Federal Register, that arise from that determination.

### 3. Timing of Relief

In their respective pleadings, the parties dispute the deadline by which the Court should require EPA to reach a final determination. Sierra Club asks the Court to issue an order requiring EPA to undertake its nondiscretionary duties *nunc pro tunc* as of May 15, 1997, the deadline set by the CAA. *See* Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. at 33. EPA and the intervenors, on the other hand, argue that *nunc pro tunc* relief is inappropriate. Instead, they contend that the Court should use its equitable authority to adopt the determination and publication schedule proposed by EPA. *See, e.g.,* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 21–22.

### a. Nunc Pro Tunc Relief

"A *nunc pro tunc* order should be granted or refused, as justice may require in view of the circumstances of the particular case." *Mitchell v. Overman*, 103 U.S. (13 Otto) 62, 65, 26 L.Ed. 369 (1880). Such relief is exceptional: it "has been granted only in a limited number of circumstances, where its entry is necessary to avoid, and does not create, an injustice at the hands of the court itself." *Weil v. Markowitz*, 898 F.2d 198, 201 (D.C.Cir.1990). Because the decision turns on the circumstances of the particular case, "the issue of whether to grant *nunc pro tunc* relief is best left to the discretion of the District Court." *Id.* at 200 (internal quotations and citation omitted).

---

**17.** As noted, Sierra Club argues that the statute does not allow for a notice and comment period prior to EPA's final determination. Rather, Sierra Club contends that EPA's public statements to date indicate that it has already reached the determination required by the statute. The Court's decision to accept EPA's view of the statutory scheme does not indicate that Sierra Club's alternate view is

unreasonable. Under *Chevron* and its progeny, Sierra Club's interpretation is virtually irrelevant. As long as EPA's construction of the applicable language is reasonable and consistent with the statutory purpose, the Court must defer to it, even if it is not "the only permissible construction." *Chemical Mfrs. Ass'n, v. NRDC*, 470 U.S. 116, 125, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985)

The Court finds that *nunc pro tunc* relief is not fitting in this Clean Air Act case. Preliminarily, the Court observes that its limited statutory authority under 42 U.S.C. § 7604(a) vests only *after* EPA has failed to undertake some mandatory action prior to a certain deadline. (The Court has no such authority prior to the expiration of a deadline because, in advance of a deadline's expiration, the agency has not yet failed to undertake its duty.) In other words, the Court's power to grant relief in cases such as this one arises *only* in situations in which the administrator should have taken action in the past. Interestingly, however, even though the CAA envisions relief following EPA's failure to take nondiscretionary steps by deadlines in the past, the statute does not expressly allow for *nunc pro tunc* relief. *See* 42 U.S.C. § 7604(a). Further, none of the parties to this suit refer the Court to a single case in which a court, exercising jurisdiction under section 7604(a)(2), granted *nunc pro tunc* relief relating back to the missed deadline. On the other hand, several courts have issued orders requiring EPA to undertake nondiscretionary actions *without* requiring retroactivity to the deadline that has passed. *See, e.g., Sierra Club v. Thomas,* 658 F.Supp. 165, 171 (N.D.Cal.1987); *New York v. Thomas,* 613 F.Supp. 1472, 1476, 1481–86 (D.D.C.1985), *rev'd on other grounds. Thomas v. State of New York,* 802 F.2d 1443 (D.C.Cir.1986). Accordingly, this Court is not persuaded that *nunc pro tunc* relief is required simply because EPA missed the deadlines clearly established by the CAA.

In support of its request for *nunc pro tunc* relief, Sierra Club turns to *Ethyl Corp. v. Browner,* 67 F.3d 941 (D.C.Cir. 1995), a CAA case in which the D.C. Circuit required EPA to issue a waiver *nunc pro tunc* allowing distribution of a fuel additive known as MMT. *See id.* at 941–42. Notwithstanding *Ethyl*'s seeming applicability in this case, the appeals court's decision to grant the exceptional relief was rooted in factors not present here. First, unlike this Court, the *Ethyl* court was not considering a grant of relief under section 7604(a)(2) following EPA's failure to perform a nondiscretionary duty. Second, the *Ethyl* court granted relief retroactively because, it concluded, EPA had long since formally determined that the fuel additive in question satisfied the only requirement for receiving a waiver. *See id.* at 943–44 ("[O]n November 30, 1993, EPA found that MMT did not 'cause or contribute' to the failure of emissions controls systems—the sole criterion for granting a[ ] waiver."). In this case, by contrast, EPA has not reached final conclusions or findings of fact that would necessarily trigger further action under the Act. To the contrary, as already noted, EPA continues to mull the attainment data for the St. Louis NAA, its interplay with the NOx SIP Call Rule, and applicable public comments. Because there has been no triggering finding of fact or final determination, the relief granted in *Ethyl* does not fit the facts of this case. Finally, *nunc pro tunc* relief was appropriate in *Ethyl* only because the D.C. Circuit "has extended the traditional doctrine to embrace agency conduct, where necessary to put the victim of agency error 'in the economic position it would have occupied but for the error.'" *Id.* at 945. In this case, by contrast, Sierra Club has not demonstrated that EPA's failure has caused *economic* harm, nor that *nunc pro tunc* relief would satisfactorily reverse it.

The matter before this Court is more in keeping with the Supreme Court's analysis in *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In that case, the Supreme Court determined that, under the watchful eye of an equity court, technical statutory directives should give way when they clash with the underlying purposes of the legislation in question. *See id.* at 313–14, 102 S.Ct. 1798; *see also Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 543, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). The CAA, the statute at issue in this case, was enacted in order to afford the national population relief from airborne pollutants.

*See* 42 U.S.C. § 7401(b). In keeping with the statutory mandate, EPA works together with states and localities in an effort to fulfill the CAA's purpose. In part, EPA's efforts at reducing airborne pollutants requires it to assess the manner in which upwind pollutants affect downwind regions. As noted, in keeping with that effort, EPA has promulgated the NOx SIP Call Rule, which, in pertinent part, the D.C. Circuit upheld in the face of petitions for review. *See Michigan v. U.S. EPA,* 213 F.3d 663 (D.C.Cir.2000). This consideration—adequately accounting for upwind pollution prior to assessing a downwind NAA's clean air efforts—is the reason that EPA has not yet issued its determination. *See* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 7–9. EPA's efforts in this regard are directly tied to the statutory purpose of "protect[ing] and enhanc[ing] the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). Accordingly, in keeping with *Romero–Barcelo* and distinct from *Ethyl,* the Court shall not order that EPA issue its determination and any resulting publication *nunc pro tunc.*

The Court is further persuaded to deny the requested *nunc pro tunc* relief because granting it could "create ... an injustice at the hands of the court itself." *Weil,* 898 F.2d at 201. As EPA and the State of Missouri contend, granting *nunc pro tunc* relief could throw the St. Louis NAA into extreme noncompliance. *See* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 22; State of Missouri's Responses to Pending Dispositive Mots. Filed by the Parties at 6–8. If EPA were to determine, *nunc pro tunc,* that the NAA had not attained the requisite ozone standards, the NAA would be automatically reclassified as a "serious" region as of May 15, 1997. *See* 42 U.S.C. § 7511(b)(2)(A). That reclassification would carry with it a battery of new requirements, *see* 42 U.S.C. § 7511a(c), (i), including a new, inflexible, and expired attainment date of November

15, 1999. *See* 42 U.S.C. § 7511(a)(1). By possibly imposing a new classification that carries with it a deadline that has already expired, the Court could potentially expose the State of Missouri to a variety of sanctions for failing to comply promptly and adequately. *See, e.g.,* 42 U.S.C. § 7509(a), (b). In other words, by finding that EPA had failed in its duty and by granting *nunc pro tunc* relief, the Court could effectively penalize the state and local entities that are required to comply with EPA findings. Thus, the Court determines that requiring a *nunc pro tunc* determination would effectively create in an injustice with regard to the state and the NAA. Accordingly, in keeping with *Weil,* the Court shall refrain from ordering EPA to reach a formal determination *nunc pro tunc.*

### b. EPA's Proposed Schedule for Compliance

Contrary to Sierra Club's request for retroactive relief, EPA and the intervenors ask the Court to issue an order that allows the agency to further delay its determination. *See* EPA's Mem. in Opp'n to Pls.' Mot. for Summ. J. on Count I and in Supp. of Cross–Mot. for J. on Remedy at 24–28; AIM/AGC Intervenors' Mem. of P. & A. in Response to Dispositive Mots. on Counts I & II at 2, 9–13, 34–40. In its most recently revised proposal, EPA seeks the Court's approval to wait until June 29, 2001, and possibly until June 22, 2002, before issuing the determination and resulting publication that the statute required by May 15, 1997. EPA argues that this delayed scheduled is the result of the D.C. Circuit's order of August 30, 2000, in which the court extended, by one year, the time in which upwind states must satisfy the NOx SIP Call Rule, which accounts for the effect that upwind pollutants have on downwind NAAs. *See* EPA's Mot. for Leave to File Supplemental Decls. Ex. 1 at 5–6 (Statement of William A. Spratlin); *Michigan v. EPA,* No. 98–1497, 2000 WL 1341477 (D.C.Cir. Aug. 30, 2000).

The extended compliance schedule that EPA seeks is not warranted. Nothing in the statute affords the Court any flexibility with regard to developing an alternative timing schedule that bends along with a state's efforts and EPA's reactions thereto. While the Court is unwilling to grant the exceptional relief of ordering *nunc pro tunc* determination and publication, it is similarly unwilling to allow EPA to continue to delay the nondiscretionary duty that the statute imposes. In fact, allowing for the flexible schedule with alternative deadlines that EPA proposes would effectively amount to condoning a fully discretionary approach to a nondiscretionary duty. Notwithstanding the extent of its authority to fashion appropriate equitable relief, the Court is unwilling to order a remedy that would so completely neutralize the mandatory nature of the statutory directive. The statutory duty is not simply to "determine" and "publish" in the abstract. It is to "determine" and "publish" by a date certain. *See Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C.Cir.1987). While the Court will not impose the *nunc pro tunc* relief that Sierra Club requests, neither will it permit EPA to select the date by which it will comply. Accordingly, the agency's request for an order imposing the proposed alternative schedule shall be denied.

### c. Timing of Determination and Resulting Publication, If Any

The Court has decided not to require EPA to issue a formal determination *nunc pro tunc* and not to allow EPA an extended future schedule within which to comply. Accordingly, EPA must reach its statutorily required determination promptly. The Court shall allow the agency an additional forty-five days within which to assess pertinent data and comments. Thus, no later than **March 12, 2001,** EPA shall formally determine, pursuant to 42 U.S.C. § 7511(b)(2)(A), whether the St. Louis NAA attained the requisite ozone stan-

dards. Furthermore, the Court shall require that, no later than **March 12, 2001,** EPA must publish any notices required by 42 U.S.C. § 7511(b)(2)(B).

## V. CONCLUSION

For the foregoing reasons, the Court shall (1) grant EPA's motion to dismiss Count II; (2) grant in part and deny in part Sierra Club's motion to modify the Court's Order issued January 28, 2000; (3) grant Sierra Club's motion for summary judgment, yet deny the requested relief; (4) deny the EPA's motion for summary judgment as to remedy; (5) deny the State of Illinois' motion for summary judgment as to remedy; (6) order EPA to reach a final determination with respect to the St. Louis NAA's attainment no later than March 12, 2001; (6) order EPA to publish, no later that March 12, 2001, any notices that are statutorily required as a result of its determination; and (7) deny the AIM/AGC Intervenors' motion to dismiss and/or strike for lack of subject matter jurisdiction. An Order accompanies this Memorandum Opinion.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 26 of January, 2001, hereby

**ORDERED** that Defendant EPA's [1] Motion to Dismiss Count II [# 136] is GRANTED; it is further

**ORDERED** that, to the extent that it seeks amendment of the Court's treatment of Count I in its January 28, 2000, Order, Plaintiff Sierra Club's Motion for Modification of Opinion and Order [# 109] is GRANTED. Accordingly, the phrase in the January 28, 2000 Order that reads "HELD IN ABEYANCE as to Counts I–II" is hereby amended so that it reads

---

1. For convenience, the Court refers the Plaintiffs as "Sierra Club," to Defendant Carol M. Browner as "EPA," and to the trade associa-

tion intervenors as the "AIM/AGC Intervenors."

"HELD IN ABEYANCE as to Count II." It is further

**ORDERED** that, to the extent that it seeks reinstatement of Count VI, Sierra Club's Motion for Modification of Opinion and Order [# 109] is DENIED AS MOOT; it is further

**ORDERED** that Sierra Club's Motion for Summary Judgment on Count I[# 23] is GRANTED but that Sierra Club's requested relief is DENIED; it is further

**ORDERED** that EPA's Cross–Motion for Judgment on Remedy Under Count I[# 61] is DENIED; it is further

**ORDERED** that Illinois' Cross–Motion for Summary Judgment on Count I Remedy [# 122] is DENIED; it is further

**ORDERED** that, in keeping with the entry of summary judgment in favor of Sierra Club and pursuant to 42 U.S.C. § 7511(b)(2)(A), EPA shall, no later than March 12, 2001, DETERMINE whether the St. Louis Nonattainment Area attained the applicable ozone standard; it is further

**ORDERED** that, pursuant to 42 U.S.C. § 7511(b)(2)(B), EPA shall, no later than March 12, 2001, PUBLISH NOTICE, if any, required as a result of its determination; it is further

**ORDERED** that the AIM/AGC Intervenors' Motion to Dismiss and/or Strike for Lack of Subject Matter Jurisdiction is DENIED [# 118]; it is further

**ORDERED** that the Complaint is dismissed and that this is a final, appealable Order.

**SO ORDERED.**