NEW YORK PUBLIC INTEREST RESEARCH GROUP, INC.,
Plaintiff,

v.

Christine T. WHITMAN, in her official capacity as Administrator, United States Environmental Protection Agency, and the United States Environmental Protection Agency, Defendants.

Sierra Club Plaintiff,

v.

Christine T. Whitman, in her official capacity as Administrator, United States Environmental Protection Agency, and the United States Environmental Protection Agency, Defendants.

Nos. CIV.A.02–CV–337 ESH, CIV.A.02–CV–338 ESH.

United States District Court, District of Columbia.

Aug. 22, 2002.

Robert Ukeiley, Atlanta, GA, Keri Powell, Washington, DC, for Plaintiff.

Eric G. Hostetler, U.S. Department of Justice, Environmental Defense Section, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs seek discovery to bolster their claim that because the Environmental Protection Agency ("EPA") has failed to respond to Clean Air Act ("CAA") petitions within the sixty-day statutory deadline, 42 U.S.C. § 7661d(b)(2), they are entitled to far-reaching injunctive relief that would force the EPA to perform future nondiscretionary duties in a timely fashion. As explained more fully below, no purpose would be served by compelling the requested discovery relating to the EPA's nationwide administration of CAA petitions, for Congress has limited the relief that can be court ordered. The Court therefore grants defendants' motion to stay discovery.

## BACKGROUND

Title V of the CAA requires the EPA Administrator (the "Administrator") to object to permits issued by state permitting authorities which are not in compliance with CAA requirements. 42 U.S.C. § 7661d(b)(1). If the Administrator does not object to the issuance of a permit, then

any person may petition the Administrator to take such action, and the Administrator must grant or deny such petition within sixty days after the petition is filed. 42 U.S.C. § 7661d(b)(2). The CAA allows any person to bring a "citizen['s] suit" "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . . ." 42 U.S.C. § 7604(a)(2).

On February 21, 2002, plaintiffs brought citizen suits pursuant to 42 U.S.C. § 7604(a) to require the EPA to respond to numerous petitions that plaintiffs had submitted. The sixty-day deadline for each of the petitions had already passed at the time the complaints were filed. Plaintiffs' original complaint, filed on February 21, 2002, alleged that the EPA had engaged in a "pattern and practice" of failing to respond to similar petitions in a timely manner, and sought equitable relief ordering the EPA to take steps to ensure that it would respond in the future to such petitions within the legal deadline. In response, the EPA moved to dismiss such claims based on sovereign immunity, ripeness grounds, lack of standing, and failure to provide adequate pre-suit notice. Thereafter, plaintiffs voluntarily amended their complaint on two occasions and dismissed their "pattern and practice" claims.

Plaintiffs now seek discovery, consisting of up to three depositions and twenty-five interrogatories addressing the EPA's nationwide administration of CAA petitions. They claim that "[such] discovery is relevant to establishing that prospective relief is necessary and what that relief should be." (Revised Joint Rule 16.3 Report at 4.) As plaintiffs explain, they want to "take discovery on the current nature and causes of EPA's delays as well as solutions to address the delay." (Pls.' Opp. at 12.) They contend that the Court has "consid-erable latitude in shaping its order that requires EPA to perform its nondiscretionary [duty] of responding to Plaintiffs' Title V petitions." (Pls.' Opp. at 5.) According to plaintiffs, the Court's broad equitable powers would enable it to issue an order "requiring EPA to respond to all of Plaintiffs['] petitions in 60 days while still maintaining a first in, first out system." (*Id.* at 5–6.) Alternatively, as indicated at the July 2, 2002 status conference, plaintiffs believe that the Court can order the EPA "to fix" the system, for instance, by requiring the EPA "to implement a system of petition review that ensures that it is possible to respond to petitions within the legally allowed 60 days." (*Id.* at 6.)

In the absence of any case law directly on point, plaintiffs support their contention that this Court has broad equitable powers to fashion an appropriate remedy by citing case law decided under different statutes. In response, defendants argue that plaintiffs are not entitled to discovery, because the CAA expressly limits the relief that a court may order. They claim that the CAA Citizen Suit Provision, 42 U.S.C. § 7604(a), only permits a court to order the Administrator to respond to specific petitions, and that any injunction that reaches beyond a specific petition would exceed the scope of the court's statutory authority. Defendants further argue that the cases cited by plaintiffs are inapposite because they refer to different statutes that grant different equitable powers and "do not interpret the applicable limitation on this Court's jurisdiction." (Defs.' Rep. at 2.) While there can be no doubt that timely responses to citizen suits does, as argued by plaintiffs, further the public good, the Court is constrained in its ability to remedy the systemic problem that plaintiffs have identified.

## ANALYSIS

At the outset, plaintiffs "do[ ] not dispute that this Court's authority is limited

to ordering EPA to perform its nondiscretionary duty." (Pls.' Opp. at 5.) Plaintiffs argue, nonetheless, that the Court has "considerable latitude" in "shaping its order" so as to require the EPA to comply with its nondiscretionary duty to "grant or deny" plaintiffs' Title V petitions. Whatever the exact limits of the Court's powers are, it is clear that they do not extend far enough to encompass the relief that plaintiffs seek here.

First, the Court looks to the express language set forth in the CAA. Under 42 U.S.C. § 7604(a), "district courts shall have jurisdiction ... to order the Administrator to perform such act or duty." That duty is explained in 42 U.S.C. § 7661d(b)(2)—the Administrator must "grant or deny [a Title V] petition within sixty days after the petition is filed." The discovery plaintiffs seek, however, is not related to "grant[ing] or deny[ing]" the specific petitions that are the subject of plaintiffs' amended claims, and in fact, at a status conference held on July 2, 2002, defendants appear to have conceded liability as to the petitions that are still outstanding. Rather, plaintiffs desire broad programmatic relief to remedy what they perceive to be flaws in the agency's system for responding to petitions. The statutory language, however, limits the Court's power to addressing only the petitions before it.

In effect, plaintiffs ask this Court to intrude upon the agency's discretionary domain to organize its operations with respect to Title V petitions; however, the Court lacks jurisdiction to provide such a remedy. "[T]he district court has jurisdiction, under Section 304, to compel the Administrator to perform purely ministerial acts, not to order the Administrator to make particular judgmental decisions." *Envtl. Defense Fund v. Thomas*, 870 F.2d 892, 899 (2d Cir.1989); *see also Monon-*

*gahela Power Co. v. Reilly*, 980 F.2d 272, 276 (4th Cir.1992) (the term "nondiscretionary [is] narrowly construed"); *Sierra Club v. Train*, 557 F.2d 485, 488 (5th Cir. 1977) (analyzing nondiscretionary duties in context of Federal Water Pollution Control Act) ("substantive issue ... whether [statute] imposes a discretionary or a nondiscretionary duty"). Indeed, a citizen's suit " 'was intended to provide relief only in a narrowly-defined class of situations in which the Administrator failed to perform a mandatory function; it was not designed to permit review of the performance of those functions, nor to permit the court to direct the manner in which any discretion given the Administrator in the performance of those functions should be exercised.' " *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1355 (9th Cir.1978) (quoting *Wisconsin Envtl. Decade, Inc. v. Wisconsin Power & Light Co.*, 395 F.Supp. 313, 321 (W.D.Wis.1975)).

Both the structure of the Act and its legislative history indicate that Congress intended that the available remedies were limited to those expressly provided for. "The legislative history of the [CAA] contains explicit indications that private enforcement suits were intended to be limited to the injunctive relief expressly provided for." *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 18 n. 27, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). *See also* 116 Cong. Rec. 33104 (1970) ("It has been argued ... that conferring additional rights on the citizen might burden the courts unduly.... [T]he citizen suit provision ... has been carefully drafted to prevent this consequence ....") (statement of Senator Hart); *See id.* at 33102 ("The [CAA is] limited to seek[ing] abatement of violation of standards established administratively under the act, and expressly excludes damages actions.") (statement of Senator Muskie).

The Court's conclusion is also consistent with the rationale of this Court in *Sierra Club v. Browner*, 130 F.Supp.2d 78 (D.D.C. 2001), *aff'd*, 285 F.3d 63 (D.C.Cir.2002), where the Honorable Colleen Kollar–Kotelly observed:

> [T]he CAA expressly limits the relief that district courts may afford in citizen suits like this one. Under 42 U.S.C. § 7604(a), the Court may grant no relief beyond "order[ing] the Administrator to perform [a non-discretionary] act or duty [or] compel[ling] ... agency action unreasonably delayed." 42 U.S.C. § 7604(a). In other words, the Court's power is limited to requiring EPA to undertake nondiscretionary actions required by the statute.
>
> \* \* \* \* \* \*
>
> Under the CAA, the Court can only order EPA to take nondiscretionary actions required by the statute itself. *See* 42 U.S.C. § 7604(a). The Act expressly limits the Court's authority in this regard and does not envision other types of relief.

*Id.* at 89–90.[1]

Plaintiffs cite *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973), to argue that courts often have broad equitable powers. While there can be no question that in many instances Congress grants courts the ability to exercise broad equitable powers to fashion appropriate remedies, *see, e.g., Renegotiation Board v. Bannercraft Co.*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974) (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 403, 66

S.Ct. 1086, 90 L.Ed. 1332 (1946)), it is also true that "Congress knows how to deprive a court of broad equitable power when it chooses so to do ...." *Renegotiation Board*, 415 U.S. at 19, 94 S.Ct. 1028. In addressing Congress' intent under the CAA, plaintiffs must argue by analogy, for there is no case law defining a court's powers under the CAA or a comparably-worded statute. But as defendants correctly observe, the case law upon which plaintiffs rely "involve[s] statutes other than the Clean Air Act with different provisions concerning the kind of relief that could be awarded." (Defs.' Rep. at 6.) For instance, the statute considered in this Circuit's decision in *Neal v. Director, Dist. of Columbia Dep't of Corrections*, 1995 WL 517244, at \*1 (D.C.Cir.1995), enabled the district court to "order such affirmative action as may be appropriate, which may include, but is not limited to ... any other equitable relief as the court deems appropriate." Similarly, in *United States v. Savran*, 755 F.Supp. 1165, 1177 (E.D.N.Y. 1991), the applicable statute authorized a court to take "such other action, as is warranted to prevent a continuing and substantial injury ...." No comparably broad language is present in the CAA

Plaintiffs rely primarily on the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), but this analogy fares no better, because the two statutes are not sufficiently similar. In *Renegotiation Board*, 415 U.S. at 20, 94 S.Ct. 1028, the Supreme Court suggested in dicta that FOIA's remedies were not necessarily exclusive, given the statute's "express vesting of equitable jurisdiction in the district court." *See also*

---

1. The parties agree that plaintiffs are not alleging any action "unreasonably delayed" by the Secretary, and therefore, this Court need not address the statutory language regarding such suits. In any event, this Court would lack jurisdiction over any such suits, because plaintiffs have not satisfied the mandatory 180–day notice period provision. *See* 42 U.S.C. § 7604(b); *Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

*Payne Enterprises v. United States*, 837 F.2d 486, 494–95 (D.C.Cir.1988) (following *Renegotiation Board* in concluding that "FOIA imposes no limits on courts' equitable powers in enforcing its terms" and in remanding for consideration of equitable relief); *Long v. IRS*, 693 F.2d 907, 910 (9th Cir.1982) (injunctive relief "appropriate ... to prevent the prolonged delays and repeated litigation over disclosure of the same type of documents in the future"). The Court in *Renegotiation Board* concluded that the *"Babcock* and *Switchmen's Union* principle of a statutorily prescribed special and exclusive remedy was not applicable to FOIA cases." 415 U.S. at 19–20, 94 S.Ct. 1028. *See United States v. Babcock*, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011 (1919) ("[W]here a statute creates a right and provides a special remedy, that remedy is exclusive."); *Switchmen's Union v. Nat'l Mediation Board*, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61 (1943) ("Congress for reasons of its own decided upon the method for the protection of the 'right' which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end."). In making its determination in *Renegotiation Board*, the Court relied on "[FOIA's] broad language ... with its obvious emphasis on disclosure and with its exemptions carefully delineated as exceptions; the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do ....; and the fact that the Act, to a definite degree, makes the District Court the enforcement arm of the statute [citing 5 U.S.C. § 552(a)(3) ]." 415 U.S. at 19–20, 94 S.Ct. 1028.

Here, CAA's relevant statutory language is different from the language in FOIA. Under FOIA, "the district court ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, a court has been granted the power to enter an injunction that transcends the specific documents that have been improperly withheld. By contrast, the CAA limits a district court's power "to order[ing] the Administrator to perform such act or duty." 42 U.S.C. § 7604(a). This more circumscribed grant of authority under the CAA, which refers only to performance of specific nondiscretionary acts or duties, indicates that a court's powers are limited to resolving on a case-by-case basis the individual petitions before it. Furthermore, district courts do not serve as the "enforcement arm" of the CAA in the same way as they do under FOIA. *Renegotiation Board*, 415 U.S. at 20, 94 S.Ct. 1028.

Lastly, the other cases cited by plaintiffs are also distinguishable. Plaintiffs present numerous cases that balance the equities to determine under what circumstances an injunction is desirable. *See, e.g., In re Barr Labs. v. Nat'l Ass'n of Pharm. Mfrs.*, 930 F.2d 72 (D.C.Cir.1991); *Garrett v. Bamford*, 538 F.2d 63, 71 (3d Cir.1976) (judicial efficiency should be considered when determining whether to grant equitable relief); *Board of Regents of Univ. of Okla. v. NCAA*, 546 F.Supp. 1276 (W.D.Okla.1982) (same). Any balancing of equities is, however, irrelevant given the Court's conclusion that it lacks the statutory power to order broad equitable relief. Plaintiffs are correct that the public's interest, including human health and welfare, would be a relevant factor in any analysis of whether to grant an injunction, but this argument presupposes that Congress has granted the courts the authority to decide whether to exercise broad equitable powers. (*See* Pls.' Opp. at 10) (citing, *inter alia, Exxon Corp. v. FTC*, 589 F.2d 582 (D.C.Cir.1978) (public welfare should

be considered in determining whether to issue an injunction)).

Moreover, as defendants observe (*see* Defs.' Rep. at 7), the underlying facts in *In re Barr Labs* do not support plaintiffs' position. There, a drug company sought a court order compelling the Food and Drug Administration ("FDA") to process applications for approval of generic drugs after the agency had repeatedly missed a statutory deadline for processing applications. Unlike here, petitioner Barr could offer no statutory language to compel agency action, but rather desired the Court to exercise equitable relief to enforce the 180–day deadline. Here, however, the situation is very different, for the CAA provides the very remedy that was lacking in *Barr, i.e.,* an order compelling the Administrator to perform her nondiscretionary duties. Furthermore, this Circuit's analysis in *In re Barr Labs* cautions against granting injunctive relief of the type that plaintiffs seek here, for a court lacks the "basis for reordering agency priorities. The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." 930 F.2d at 76. The Court noted further that: "A court order could shift, but not lift, the burden that inefficiency inflicts on pharmaceutical suppliers and users. The agency could alleviate its own inefficiencies, perhaps through generic rulemaking . . . or other simplifications of the review process—but judges have neither the capacity nor the authority to require such measures." *Id.*

## CONCLUSION

Because this Court lacks the power under the CAA to grant equitable relief beyond the specific petitions before it,

1. This schedule appears to apply only to plaintiff Sierra Club, since NYPIRG has al-

plaintiffs are not entitled to discovery. Accordingly, defendants' Motion to Stay Discovery is granted, and a briefing schedule is set forth in the attached Order.

## *ORDER*

Based upon consideration EPA's Motion to Stay Discovery and For Entry of a Briefing Schedule and Memorandum in Support Thereof [23–2], Plaintiffs' Opposition to EPA's Motion to Stay Discovery, and EPA's Reply Memorandum in Support of Motion to Stay Discovery and For Entry of a Briefing Schedule, it is hereby

**ORDERED** that defendants' Motion to Stay is **GRANTED**, and plaintiffs shall file for summary judgment on or before September 16, 2002.[1]

ready filed its Motion for Summary Judgment.