**ENVIRONMENTAL DEFENSE,**
Plaintiff,

v.

**Michael O. LEAVITT, Administrator, United States Environmental Protection Agency,[1] Defendant.**

**No. CIV.A. 03–1737(RMU).**

United States District Court, District of Columbia.

Aug. 3, 2004.

---

1. If, during the pendency of an action, a public officer who is a party to that action in his or her official capacity ceases to hold office, the officer's successor automatically is substituted as a party. FED. R. CIV. P. 25(d)(1). Accordingly, Michael O. Leavitt substitutes as the proper defendant. *Id.*

("CEED") filed a motion to intervene accompanied by a proposed motion to dismiss for lack of subject-matter jurisdiction. The court now confirms its subject-matter jurisdiction and denies CEED's motion to intervene because CEED fails to demonstrate standing or an impairment of interest. Moreover, the court determines that the proposed consent decree is fair, adequate, reasonable and appropriate, and grants the parties' motions to enter the decree.

David S. Baron, Washington, DC, for Plaintiff.

Eileen T. McDonough, U.S. DOJ, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

### DENYING CEED'S MOTION TO INTERVENE; GRANTING THE PARTIES' MOTIONS TO ENTER CONSENT DECREE

URBINA, District Judge.

## I. INTRODUCTION

Plaintiff Environmental Defense, an environmental organization, brings suit against the Administrator of the Environmental Protection Agency ("EPA"), alleging that EPA failed to carry out its responsibilities under the Clean Air Act ("the CAA"), 42 U.S.C. §§ 7401 *et seq.*, to promulgate regulations that provide guidelines and requirements for Best Available Retrofit Technology ("BART") for sources of air pollution that contribute to haze in national parks and wilderness areas. After the parties proposed to resolve this case via consent decree, the Center for Energy and Economic Development

## II. BACKGROUND

### A. Statutory and Regulatory Background

Many parks and wilderness areas across the country suffer from manmade air pollution that significantly impairs visibility. Compl. ¶ 9. This visual impairment, or "haze," arises primarily from emissions of sulfur dioxide, oxides of nitrogen and particular matter from certain "stationary sources," including fossil-fuel power plants. *Id.* ¶¶ 10, 12.

Concerned about regional haze, Congress amended the CAA in 1977 to add section 169A (current version at 42 U.S.C. § 7491). *Id.* ¶ 11. 42 U.S.C. § 7491(a)(1) establishes as a national goal "the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory class I Federal areas which impairment results from manmade pollution." [2] *Id.* ¶ 11 (quoting 42 U.S.C. § 7491(a)). Furthermore, § 7491(a)(4) requires the EPA Administrator to "promulgate regulations to assure ... reasonable progress toward meeting the national goal ... and ... compliance with the require-

---

**2.** "The term 'Mandatory class I Federal areas' encompasses 156 parks and wilderness areas throughout the nation ... including such parks as Shenandoah, Great Smoky Mountains, Bryce, Zion, Glacier, Yellowstone, Grand Canyon, and Yosemite.' " Compl. ¶ 11 (citing 64 Fed.Reg. 35714, 35716 (July 1, 1999)).

ments of this section." 42 U.S.C. § 7491(a)(4).

The regulations that § 7491(a)(4) requires the EPA Administrator to promulgate must generally (1) provide guidelines to states on techniques for implementing the national goal ("Guidelines Requirement"), and (2) require that state implementation plans ("SIPs") contain requirements that certain "major stationary sources" install BART to control emissions contributing to visibility impairment ("BART Requirement"). Compl. ¶ 12; 42 U.S.C. § 7491(b)(1) (elaborating the Guideline Requirement), (b)(2) (elaborating the BART Requirement).

In December 1980, EPA issued its first visibility regulations in accordance with § 7491(b). *Am. Corn Growers Assoc. v. Envtl. Prot. Agency*, 291 F.3d 1, 3 (D.C.Cir.2002) ("*American Corn*"). The 1980 regulations "[were] limited ... to impairment attributable to specific sources and deferred any action on regional haze attributable to multiple sources located across broad geographic regions because there was insufficient data regarding the relationship between emitted pollutants, pollutant transport and visibility impairment." *Id.* (citing 45 Fed.Reg. at 80086).

Ten years later, Congress again amended the CAA to address visibility impairment, this time adding section 169B (current version at 42 U.S.C. § 7492). Compl. ¶ 13; *American Corn*, 291 F.3d at 4. The newly-added section (1) directs EPA to identify sources of visibility impairment in class I areas, (2) authorizes EPA to establish visibility-transport commissions to re-

port on visibility impairment in affected regions, and (3) requires EPA to establish a visibility-transport commission for the Grand Canyon National Park. 42 U.S.C. § 7492(a), (c)-(d), (f). In addition, § 7492(e) provides that within eighteen months of receiving a report from a visibility-transport commission, EPA must "carry out [its] regulatory responsibilities under section 7491 of this title, including [establishing] criteria for measuring 'reasonable progress' toward the national goal." *Id.* § 7492(e)(1); Compl. ¶ 13.

Pursuant to these directives, EPA established the Grand Canyon Visibility Transport Commission ("GCVTC") in November 1991. *American Corn*, 291 F.3d at 4. In June 1996, that commission issued its final report, triggering § 7492(e)'s eighteen-month clock for EPA to carry out its responsibilities under § 7491. *Id.*; Compl. ¶ 17. Accordingly, in July 1997 EPA published a proposed regulation that addressed regional haze. *American Corn*, 291 F.3d at 4. Two years later, in July 1999, EPA promulgated the final version of the regional-haze regulation ("the Haze Rule").[3] *Id.*; Compl. ¶ 16. Among other requirements, the Haze Rule

> provides that each state must develop a long-term strategy for achieving its visibility improvement goals. This strategy must include the identification of all major stationary sources subject to [BART] requirements ... us[ing] a group rather than a source-by-source approach. In addition, when establishing emission limits for BART sources, states must consider the improvement in visibility that would result if the technology were used

---

**3.** In its Haze Rule, EPA indicated that it would issue revised BART guidance within a year. *E.g.*, 64 Fed.Reg. at 35740, 35756. Toward that end, in July 2001, EPA issued a proposal requesting comments on implementation of the final regulation's BART requirements. 66 Fed.Reg. 38108, 38108 (July 20,

2001); Compl. ¶ 15. EPA never issued a final rule, however, instead stating that the issues presented in its July 2001 proposal would be addressed in a proposed April 2004 rulemaking. Def.'s Opp'n to Mot. to Intervene at 4 n. 2

at all comparable BART sources (rather than the improvement that a particular device at a particular source would accomplish).

*American Corn*, 291 F.3d at 4.

Subsequently, a group of industry associations, various states and an environmental organization challenged the Haze Rule. *Id.* at 2. In May 2002, the D.C. Circuit issued an opinion generally upholding the Haze Rule with the notable exception of its application of the BART Requirement. *Id.* at 5–15. The circuit court held that "the Haze Rule's BART provisions are contrary to the text, structure and history of [42 U.S.C. § 7491] ... because the rule isolates [42 U.S.C. § 7491(g)(2)'s] benefit calculation and constrains authority Congress conferred on the states." *Id.* at 9. The court therefore vacated the provisions of the Haze Rule pertaining to the BART Requirement and remanded them to EPA.[4] *Id.* at 6; Compl. ¶ 16.

### B. The Procedural Background

On August 15, 2003, the plaintiff filed suit in this court under 42 U.S.C. §§ 7491 and 7492, alleging that EPA failed to carry out its Guidelines Requirement and BART Requirement and requesting declaratory and injunctive relief directing EPA to complete these responsibilities. Compl. ¶¶ 14–19. As to the Guidelines Requirement, the plaintiff alleges that, although EPA *proposed* regional haze guidelines, EPA never *promulgated* regulations as required by § 7491(b)(1). *Id.* ¶ 15. As to the BART Requirement, the plaintiff alleges that EPA failed to promulgate regulations to require BART for certain facilities in accordance with § 7491(b)(2). *Id.* ¶ 16. Although EPA promulgated such regulations in July 1999, the plaintiff maintains that *American Corn* vacated that promulgation

and thus nullified the effect of EPA's July 1999 promulgation and reset EPA's duty to promulgate. *Id.* Finally, the plaintiff maintains that § 7492(e)(1) requires EPA to have fulfilled the Guidelines Requirement and BART Requirement no later than December 1997, a date which has long since passed. *Id.* ¶ 17.

On August 18, 2003, only three days after the plaintiff filed its complaint, EPA filed a notice lodging a proposed consent decree ("decree") that, *inter alia*, requires EPA to issue its proposed regulations for the Guidelines Requirement and BART Requirement by no later than April 15, 2004 and its final regulations by no later than April 15, 2005. Def.'s Notice Attach. 1 ¶ 2. The decree provides in pertinent part:

### DEFINITION

1. For the purposes of this Consent Decree, the following terms shall have the following meaning:

"BART rule" shall mean the regulations and guidelines that are required to be promulgated and published in the Federal Register by the Administrator pursuant to 42 U.S.C. §§ 7491(a)(4), 7491(b) and 7492(e).

### EPA OBLIGATIONS

2.a. i. No later than April 15, 2004, EPA shall sign for publication in the Federal Register a notice of proposed rulemaking setting forth its proposed BART Rule[;]

ii. No later than five calendar days following signature of the notice of proposed rulemaking, EPA shall deliver the notice to the Office of the Federal Reg-

---

4. In response to a Sierra Club challenge, the circuit court also remanded an EPA determination to give states three years to file SIPs

for areas designated "attainment" or "unclassifiable." *American Corn*, 291 F.3d at 15.

ister for prompt publication. Following such delivery to the Office of the Federal Register, EPA shall not take any step (other than as necessary to correct within 10 calendar days after submittal any typographical or other errors in form) to delay or otherwise interfere with publication of such notice in the Federal Register. EPA shall make available to Plaintiff, within five business days following signature by the Administrator or her delegate, copies of the notice of proposed rulemaking referenced in paragraph 2.a.i.

b. i. No later than April 15, 2005, EPA shall sign for publication in the Federal Register a notice of final rulemaking setting forth its final BART Rule;

ii. No later than five calendar days following signature of the notice of final rulemaking referenced in paragraph 2.b.i. above, EPA shall deliver notice to the Office of the Federal Register for prompt publication. Following such delivery to the Office of the Federal Register, EPA shall not take any step (other than as necessary to correct within 10 calendar days after submittal any typographical or other errors in form) to delay or otherwise interfere with publication of such notice in the Federal Register. EPA shall make available to Plaintiff, within five business days following signature by the Administrator or her delegate, copies of the notice of final rulemaking referenced in paragraph 2.b.i.

## MODIFICATION OF THIS DECREE

3. The Parties may extend the deadlines established in Paragraph 2 by written stipulation executed by counsel for the Parties and filed with the Court. In addition, any provision of this Consent Decree may be modified by the Court upon motion by any party to this Consent Decree demonstrating that such modification is consistent with law and in the public interest, after consideration of any response by the non-moving party.

4. Consistent with paragraph 3, EPA may request modification of the deadlines set out in this Consent Decree in accordance with the following procedures:

a. If EPA seeks to modify a deadline established by this Consent Decree, EPA shall make its best efforts to provide notice to plaintiffs at least 30 days prior to the deadline that EPA seeks to modify;

b. If EPA seeks to modify a deadline established by this Consent Decree, but has not given plaintiffs' counsel the advance notice specified in subparagraph a of this paragraph, then EPA shall notify plaintiff's counsel in writing of the reasons why such prior notice was not practicable. Such notice shall be given by such means as to be received by plaintiff's counsel no later than the date when the motion to modify is filed with the Court.

\* \* \* \* \* \*

## SAVINGS PROVISION

\* \* \* \* \* \*

7. Nothing in this Consent Decree shall be considered to limit or modify any discretion EPA may have to alter, amend, or revise the actions taken pursuant to Paragraph 2 of this Consent Decree.

8. Nothing in the terms of this Decree shall be construed to limit or modify the discretion accorded EPA by the Clean Air Act or by general principles of administrative law in taking the actions referred to in Paragraph 2.

Def.'s Notice Attach. 1. EPA indicated that the notice was lodged for public comment pursuant to 42 U.S.C. § 7413(g), and that if the comment period revealed no facts or considerations that the decree was inappropriate, improper, inadequate, or inconsistent with the CAA, EPA would move the court to enter it. Def.'s Notice Attach. at 1–2.

On October 16, 2003, CEED filed a motion to intervene accompanied by a proposed motion to dismiss for lack of subject-matter jurisdiction. On December 16 and 23, respectively, EPA and the plaintiff filed motions to enter the lodged decree, modified to exclude a paragraph citing the now-completed public-comment requirement. Def.'s Mot. to Enter Consent Decree ("Def.'s Mot.") at 3 n. 2. The court now addresses CEED's motion to intervene and the parties' motion to enter the decree.

### III. ANALYSIS

#### A. Subject–Matter Jurisdiction

#### 1. Legal Standard for Subject–Matter Jurisdiction Under the CAA

■ The CAA contains an "unusual, bifurcated jurisdictional scheme" that divides jurisdiction between the federal district and circuit courts. *Sierra Club v. Thomas,* 828 F.2d 783, 794 (D.C.Cir.1987). Under the CAA, a person may bring suit in district court against the Administrator of EPA for failure to perform a nondiscretionary act or duty. 42 U.S.C. § 7604(a)(2); *see also Duquesne Light Co. v. Envtl. Prot. Agency,* 698 F.2d 456, 468 (D.C.Cir.1983) (noting that under the CAA, citizens are "welcome participants in the vindication of environmental interests").

This citizen-suit provision provides the district court with limited but exclusive jurisdiction to order the Administrator to perform nondiscretionary duties.[5] 42 U.S.C. § 7604(a)(2); *Sierra Club v. Whitman,* 285 F.3d 63, 68 (D.C.Cir.2002); *State of N.Y. v. Envtl. Prot. Agency,* 852 F.2d 574, 580 n. 3 (D.C.Cir.1988). Specifically, the district court may compel EPA "to perform purely ministerial acts, [but may not] order [EPA] to make particular judgmental decisions." *N.Y. Pub. Interest Research Group, Inc. v. Whitman,* 214 F.Supp.2d 1, 3 (D.D.C.2002).

■ In contrast, judicial review of final action by the EPA Administrator rests exclusively in the appellate courts. 42 U.S.C. § 7607(b)(1); *Her Majesty the Queen in Right of Ontario v. Envtl. Prot. Agency,* 912 F.2d 1525, 1530–31 (D.C.Cir. 1990). Specifically, 42 U.S.C. § 7607(b)(1) grants appellate courts jurisdiction "only to review 'any ... nationally applicable regulations promulgated, or final action taken' under the [CAA]." *Thomas,* 828 F.2d at 792.

#### 2. The Court Has Subject–Matter Jurisdiction

■ The parties maintain that this court has subject-matter jurisdiction because their dispute concerns the EPA Administrator's alleged failure to perform nondiscretionary duties. Pl.'s Supp. Mem. at 3; Def.'s Supp. Mem. at 4. The court, however, must satisfy itself that it has subject-matter jurisdiction. *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Cobell v. Norton,* 240 F.3d 1081, 1094 (D.C.Cir.2001). The two issues for the court to resolve in this

---

**5.** Because the court's role in citizen-suit cases is to make a factual determination as to whether a violation occurred, Congress assigned these cases to the district courts, which "are better suited to making factual determinations than are courts of appeals." *Thomas,* 828 F.2d at 791.

regard are whether EPA's alleged failure to meet the Guidelines Requirement and BART Requirement involved nondiscretionary duties, and the effect of the D.C. Circuit's mandate in *American Corn*.

## B. EPA's Duty to Promulgate the Regulations in Question is Nondiscretionary

 Express deadlines in the CAA typically create nondiscretionary duties to act. *Thomas*, 828 F.2d at 790 n. 54 (holding that district courts have exclusive "jurisdiction of agency delay claims that involve a nondiscretionary duty of timeliness"). In this case, § 7492(e)(1) requires the Administrator, "within eighteen months of receipt of the report referred to in subsection (d)(2) of this section, [to] carry out the Administrator's regulatory responsibilities under section 7491 of this title[.]" As stated above, the GCVTC report was a commission report pursuant to § 7492(d)(2). Thus, once GCVTC issued its report, the Administrator had eighteen months to carry out his responsibilities under § 7491. 42 U.S.C. § 7492(e)(1); *American Corn*, 291 F.3d at 4; Compl. ¶ 17.

Because the CAA requires the Administrator to carry out his responsibilities under § 7491 within an explicit, eighteen-month time frame, the court holds that § 7492(e)(1) creates a nondiscretionary duty to comply with § 7491. *Thomas*, 828 F.2d at 790 n. 54. Moreover, because the Administrator's regulatory responsibilities under § 7491 include the two allegedly unfulfilled responsibilities at issue in this case—the Guidelines Requirement and BART Requirement—the court further holds that the plaintiff's complaint properly alleges failure to perform nondiscretionary duties. 42 U.S.C. § 7491(b)(1)—(2); *Thomas*, 828 F.2d at 790 n. 54.

## C. The Mandate in *American Corn* Presents No Obstacle to this Court's Jurisdiction

 When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must "initiate another rulemaking proceeding if it would seek to confront the problem anew." *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854 (D.C.Cir.1987); *Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89, 97 (D.C.Cir.2002) (same). In *American Corn*, therefore, the court's vacatur of EPA's promulgations relating to the BART Requirement restored the status quo before EPA promulgated those regulations. That status quo presented a situation wherein EPA had failed to promulgate regulations in accordance with the express deadline in § 7492(e)(1), despite its nondiscretionary, statutory obligation to do so. Accordingly, *American Corn* returns EPA to a situation in which this court has jurisdiction to compel EPA to promulgate regulations in accordance with the BART Requirement. 42 U.S.C. § 7604(a)(2).

An exception to this court having subject-matter jurisdiction might exist if the D.C. Circuit retained jurisdiction over the action by virtue of its mandate in *American Corn. E.g., Int'l Union v. OSHA*, 976 F.2d 749, 750 (D.C.Cir.1993) (holding that the appellate court retained "a residual jurisdiction to enforce its mandate"). In *International Union*, the D.C. Circuit asserted residual jurisdiction because it had previously remanded the case to the government for "an interpretation of the [section at issue] consistent with our construction of its essential character" and had requested status reports from the parties every sixty days. *Id.; see also City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346 (D.C.Cir.1977) (stating that

the appellate court has power to "rectify any deviation" from its mandate).

In this case, however, EPA is not attempting to deviate from the mandate of the D.C. Circuit, defy a court order or advance an interpretation of the CAA that *American Corn* rejected. Quite the contrary, EPA has done *nothing* with respect to the BART Requirement, which is precisely the point of the plaintiff's request of injunctive relief. This inaction cannot be said to violate *American Corn*, whose mandate directed EPA to go back to the drawing board but acknowledged the uncertainty regarding what regulation EPA would emerge with next. *American Corn*, 291 F.3d at 14 (stating that "we cannot be sure whether on remand EPA will retain its current criteria for evaluating reasonable progress or adopt others"). *Cf. Potomac Elec. Power Co. v. Interstate Commerce Comm'n*, 702 F.2d 1026, 1032 (D.C.Cir. 1983) (holding that "[i]f our earlier mandate *compelled* the Commission to act in a timely manner, and if it has failed to do so, we may correct its error by use of a writ of mandamus") (emphasis added).

In this case, EPA's inaction does not threaten the mandate of *American Corn*. Consequently, the D.C. Circuit retains no jurisdiction over the plaintiff's case with which this court's exercise of jurisdiction might interfere. *See also* D.C. CIR. R. 41(b) (stating that, "[i]f the case is remanded, this court does not retain jurisdiction, and a new notice of appeal or petition for review will be necessary if a party seeks review of the proceedings conducted on remand"). Furthermore, as stated above,

the vacatur in *American Corn* restored a status quo in which EPA had failed to fulfill its nondiscretionary duty under § 7492(e) to promulgate the BART Requirement no later than December 1997. Accordingly, this court has jurisdiction over the plaintiff's challenge to EPA's alleged failure to perform a nondiscretionary duty.[6] 42 U.S.C. § 7604(a)(2) (stating that district courts have jurisdiction over actions against the EPA Administrator for failure to perform a nondiscretionary duty).

## D. The Court Denies CEED's Motion to Intervene

### 1. Legal Standard for a Motion to Intervene

 Federal Rule of Civil Procedure 24 sets forth the requirements for both intervention as of right and permissive intervention. FED. R. CIV. P. 24; *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C.Cir.2003). First, Rule 24(a) provides for intervention as of right, stating that

[u]pon timely application anyone shall be permitted to intervene in an action … when a statute of the United States confers an unconditional right to intervene; or … when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Id.* As paraphrased by the D.C. Circuit, the rule indicates that an applicant's right

---

6. *American Corn* does not address EPA's duty under § 7491(b)(1) with regard to the Guidelines Requirement. Instead, the opinion focuses on the BART Requirement under § 7491(b)(2). *American Corn*, 291 F.3d at 5–9. Accordingly, the mandate of *American Corn* does not affect the ability of the plaintiff to challenge the Administrator's alleged failure to fulfill the Guidelines Requirement under § 7491(b)(1). Moreover, in light of the court's holding in Part II.A.2.a, *supra*, that the Guidelines Requirement is nondiscretionary, the court holds that it has jurisdiction over the plaintiff's claim regarding the Guidelines Requirement. 42 U.S.C. § 7604(a)(2).

to intervene depends on "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals*, 322 F.3d at 731; *see also Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C.Cir.2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation"). In addition, an applicant for intervention as of right must demonstrate that it has standing by showing injury-in-fact, causation, and redressability.[7] *Fund for Animals*, 322 F.3d at 732–33. Specifically, the applicant must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C.Cir. 1999). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.*

▮ Alternatively, Rule 24(b) authorizes permissive intervention for an applicant who timely files a motion where a federal statute confers a conditional right to intervene or the applicant's claim or defense has a question of law or fact in common with the main action. FED. R. CIV. P. 24(b). If a federal statute does not confer a conditional right to intervene, Rule 24(b)(2) requires a would-be intervenor to present "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C.Cir.1998). Moreover, a court must determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b). It is not clear, however, whether the court also must confirm that the proposed intervenor's standing for Rule 24(b) intervention. *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C.Cir.2000) (noting that in this circuit, "there is uncertainty over whether standing is necessary for permissive intervention"). Finally, because "permissive intervention is an inherently discretionary enterprise," the court enjoys considerable discretion under Rule 24(b). *Nat'l Children's Ctr.*, 146 F.3d at 1046, 1048 (noting that the court "may deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action," subject to abuse of discretion).

### 2. CEED Has Not Met the Requirements for Intervention as of Right

CEED moves to intervene as a matter of right or, in the alternative, via permis-

---

7. The case law in this circuit indicates that the requirements for Rule 24(a) and for standing are not co-extensive. The D.C. Circuit has stated that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C.Cir.2003). Apparently, however, the converse is not true: a person who satisfies constitutional standing requirements fulfills only the second of the four Rule 24(a) requirements. *Jones*, 348 F.3d at 1019 (stating that "satisfying constitutional standing requirements demonstrates the existence of a legally protected interest" under the second Rule 24(a) requirement, and then proceeding to analyze the third and fourth requirements of impairment of interest and adequacy of representation).

sive intervention. CEED Mot. to Intervene ("CEED Mot.") at 1–2. CEED states that it is "a non-profit group formed by the nation's coal-producing companies, railroads, a number of electric utilities, equipment manufacturers, and related organizations for the purpose of educating the public, including public-sector decisionmakers, about the benefits of affordable, reliable, and environmentally compatible coal-fueled electricity." *Id.* at 2. Among its members are owners and operators of coal-fired electric generating facilities subject to regulation under §§ 7491 and 7492. *Id.* CEED members also include companies that supply coal to the generating facilities, and those that transport coal between mines and the generating facilities. *Id.* CEED states that it played an active role in the regulatory process leading to the Haze Rule and in the challenge to that rule before the D.C. Circuit. *Id.* at 2, 4.

In moving to intervene pursuant to Rule 24(a), CEED contends that it has both standing and an impairment of interest in the pending action because the decree would make the timing and scope[8] of EPA's actions regarding the remand a matter of agreement between the parties, effectively limiting EPA's discretion to address the complex issues involved and giving the plaintiff "exclusive access to the rulemaking process, including the sole right to receive early notices . . . and the sole right to consent to modifications of the rulemaking schedule." *Id.* at 5–6. CEED states that its members will suffer a concrete and particularized injury if the court permits the parties to dictate or commandeer the remand process without CEED's input, as CEED members "may suffer mil-

lions of dollars in additional retrofit costs that might have been avoided had CEED had equal input." *Id.* at 6. In CEED's view, these injuries are fairly traceable to the complaint and decree, and would be redressed by CEED's intervention and ability to present its motion to dismiss. *Id.* at 6–7. As for timing, CEED argues that its action is timely because CEED filed its motion after having read about the complaint in the trade press and before the court issued any substantive orders. *Id.* at 7. Finally, CEED asserts that neither EPA—a regulatory agency—nor the plaintiff—an environmental organization—will adequately represent its interests. *Id.* at 9.

Both parties oppose CEED's intervention, arguing that CEED has neither standing nor a legally protectable interest in the action. Def.'s Opp'n to Mot. to Intervene ("Def.'s Opp'n") at 1; Pl.'s Opp'n to Mot. to Intervene ("Pl.'s Opp'n") at 1. Specifically, the parties argue that CEED fails to allege a concrete injury because the decree does not address the substance of the Guidelines Requirement and BART Requirement but merely sets a schedule for their promulgation. Def.'s Opp'n at 8; Pl.'s Opp'n at 7. Furthermore, the parties contend that the decree neither allows the plaintiff to commandeer the process nor grants the plaintiff greater rights to participate in the rulemaking, and therefore would not interfere with CEED's right to participate equally in the rulemaking process. Def.'s Opp'n at 8–9, 11; Pl.'s Opp'n at 8. Accordingly, the parties characterize CEED's assertion that its members "may suffer" from the decree as purely speculative.[9] Def.'s Opp'n at 8, 10–11; Pl.'s Opp'n at 7–8.

---

**8.** In its reply, CEED elaborates its objections to the scope of the decree, arguing that the decree creates substantive rights because it defines the "BART rule" to include regulations required to be promulgated pursuant to

§ 7492(e) as well as §§ 7491(a)(4) and (b). CEED Reply at 7–10.

**9.** In addition, EPA argues that CEED attached a motion to dismiss—rather than a

 The court concludes that CEED may not intervene as of right because it has not shown an injury or impairment sufficient to satisfy either constitutional standing or Rule 24(a)'s impairment-of-interest requirement. First, CEED has not shown that the timetable that the decree would establish will cause CEED a concrete injury or impairment. *Byrd,* 174 F.3d at 243; *Jones,* 348 F.3d at 1017. CEED states that it has a "concrete and protectable interest in ensuring that any rule promulgated by EPA in response to the *American Corn Growers* remand is adopted after due deliberation and is not artificially expedited." CEED Reply at 12. But CEED fails to show that the suggested timetable is inadequate or that modifications to the timetable are likely to be necessary, and that any such inadequacies or modifications would result in injury or impairment to CEED. *Cf. Nat'l Res. Def. Council v. Costle,* 561 F.2d 904, 911 (D.C.Cir.1977) (finding an impairment of interest where modification of the regulatory timetable was likely given past experience involving fourteen timetable modifications and by the suggestions of an advisory committee). Moreover, nothing in the decree would preclude CEED from participating in the rulemaking or from challenging the final rule that emerges. *E.g., Alternative Research & Dev. Found. v. Veneman,* 262 F.3d 406, 411 (D.C.Cir.2001) (finding that a biomedical association suffered no impairment from an agency's initiation of rulemaking because the association could participate in the rulemaking process and challenge the final rule).

Second, CEED has not shown that the decree would cause it injury or impairment by affecting the substance of EPA's rulemaking, either by limiting or expanding EPA's authority. *Byrd,* 174 F.3d at 243; *Jones,* 348 F.3d at 1017. CEED initially argues that the decree would limit EPA's discretion by granting the plaintiff "the sole right to receive early notices . . . and the sole right to consent to modifications of the rulemaking schedule." CEED Mot. at 5. The decree explicitly acknowledges EPA's discretion under the CAA and administrative law, however, and disavows any intent to limit or modify that discretion. Def.'s Mot. Attach. 1 ¶¶ 6–8. Moreover, the decree would commit EPA to making the new rules available to the plaintiff only after the rules were signed and no changes (other than typographical corrections) were possible.[10] *Id.* ¶ 2. As for modifications to the timetable, the decree would not condition extensions on the plaintiff's approval, but it would permits either party to move the court for an extension or the parties to stipulate to an extension. *Id.* ¶ 3.

As for expanded EPA authority, CEED argues that the scope of the decree—and specifically, its inclusion of 42 U.S.C. § 7492(e) in the definition of "BART Rule"—affects the substance of the BART rule. CEED Reply at 7–10. The court is not persuaded. The decree defines the BART rule as "the regulations and guidelines that are required to be promulgated and published . . . pursuant to 42 U.S.C.

"pleading"—to its motion to intervene, and suggests that CEED be given an opportunity to cure this defect. Def.'s Opp'n at 5–6 (citing Rules 7(a) and 24(c)). CEED subsequently filed a proposed answer to its reply. CEED Reply at 6–7; *see also* Clerk's Minute Entry dated Dec. 8, 2003 (stating that although CEED entered its answer in error, it could refile its answer upon the court's granting of its motion to intervene).

10. EPA states that this "early notice" provision is a verification measure that "serves only to confirm that EPA has met its obligations under the Consent Decree." Def.'s Opp'n at 9.

§§ 7491(a)(4), 7941(b) and 7492(e)." Def.'s Mot. Attach. 1 ¶ 1. As noted, § 7491(a)(4) directs EPA to promulgate regulations to "assure reasonable progress toward meeting the national goal[.]" 42 U.S.C. § 7491(a)(4). § 7491(b) then describes the content of those regulations, including but not limited to the Guidelines Requirement and BART Requirement. *Id.* § 7491(b). § 7492 builds on the previous two sections by directing the EPA to "carry out [its] regulatory responsibilities under § 7491 of this title, including criteria for measuring 'reasonable progress' toward the national goal," after receiving a report from a visibility-transport commission. 42 U.S.C. § 7492(e). The court sees nothing more remarkable in the mention of § 7492(e) than in the mention of § 7491(a)(4), which CEED views as "clearly ... [a] BART Rule," as both provisions effectively provide the overview for the regulatory content set forth in § 7491(a)(4).

In sum, CEED asks the court to make many of inferential leaps, tie them together with inferential string, and come up with injury or impairment. The court understands the theoretical possibility that EPA will rush through its work and somehow come up with a rule that harms CEED. But at this point such a possibility is pure speculation. The court therefore denies CEED's motion for intervention as of right.

### 3. Permissive Intervention Is Not Warranted

In the alternative, CEED moves the court for permissive intervention pursuant to Rule 24(b), arguing that a "flexible reading" of Rule 24(b) supports its request. CEED Mot. at 9. CEED contends that because it has "a concrete and substantial interest in the process and content of any Regional Haze rulemaking," its claims and defenses share questions of law and fact common to the pending action.

*Id.* at 10. Moreover, CEED asserts that its intervention would not prejudice the parties, and instead would permit CEED to avoid irreparable harm. *Id.* Finally, CEED states that the parties fail to present persuasive reasons why the court should not allow CEED to intervene under Rule 24(b). CEED Reply at 16–17. In response, EPA argues that the court should not allow CEED to intervene because CEED has not established standing, has failed to identify a common claim or defense, and does not qualify for the flexibility applied to cases where no other remedy is available. Def.'s Opp'n at 13–14. The plaintiff adds that Rule 24(b) intervention is inappropriate because CEED's sole apparent purpose is to thwart or delay EPA's CAA compliance and thus would cause the parties prejudice. Pl.'s Opp'n at 10.

The court concludes that permissive intervention is not warranted. *Nat'l Children's Ctr.*, 146 F.3d at 1046. Whether or not standing is a necessary prerequisite, CEED cannot intervene under Rule 24(b) because it fails to provide an independent ground for subject-matter jurisdiction. *Id.; see generally* CEED Mot. & Attach. 2; CEED Reply. In fact, CEED seeks to intervene for the very purpose of pressing the argument that the court lacks subject-matter jurisdiction. CEED Mot. at 7 (stating that CEED's alleged injuries "will be redressed if CEED is allowed to participate fully in this action and to maintain its motion to dismiss this action for lack of subject-matter jurisdiction"). This circumstance certainly is unusual, but it does not warrant permissive intervention.

### E. The Court Enters the Proposed Consent Decree

#### 1. Legal Standard for Entry of a Consent Decree

Because the parties and the general public benefit from the conservation of

resources resulting from the voluntary settlement of litigation, courts favor civil settlements. *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C.Cir. 1983). The policy of favoring consent decrees "has particular force where ... a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 84 (1st Cir.1990).

▇▇▇ Nevertheless, a court reviewing a consent decree must "determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Gorsuch,* 718 F.2d at 1126 (citations omitted); *United States v. District of Columbia,* 933 F.Supp. 42, 46–47 (D.D.C.1996) (same); *see also Commonwealth of Mass. v. Microsoft,* 373 F.3d 1199, 1206 n. 1 (D.C.Cir.2004) (noting the general requirement that a consent decree must "fairly and reasonably resolve the controversy in a manner consistent with the public interest") (internal quotations omitted); *Prue v. Shalala,* 1993 WL 183976, at *1 (D.C.Cir.1993) (stating that the court should assess whether the proposed decree is fair to its beneficiaries and consistent with the public interest).

Finally, under the CAA, prior to seeking entry of a consent decree, EPA must provide "a reasonable opportunity by notice in the Federal Register to persons who are not named as parties or interveners to the action" to provide comments on the decree. 42 U.S.C. § 7413(g).

### 2. The Consent Decree Is Fair, Adequate, Reasonable, and Appropriate

#### a. Fairness and Public Interest

▇▇▇ "A review of the fairness of a proposed consent decree requires an assessment of the good faith of the parties,

the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved." *District of Columbia,* 933 F.Supp. 42 at 48. A consent decree is substantively fair if it incorporates "concepts of corrective justice and accountability[.]" *Id.* (internal quotations and citations omitted).

Both parties desire to enter the decree, and neither alleges any impropriety in its formation. *See generally* Pl.'s Mot. to Enter Decree; Def.'s Mot. to Enter Decree. Pursuant to 42 U.S.C. § 7413(g), in September 2003 EPA published notice of the decree in the Federal Register. 68 Fed. Reg. 52, 922 (Sept. 8, 2003); Def.'s Mem. in Support at 2. As to the procedural fairness of the decree, EPA points out that "[t]he Administrator and the Attorney General, after giving due consideration to the written comments, concluded that none raised any fact or consideration that would warrant withdrawing consent to the proposed consent decree." Def.'s Mem. in Support at 2–3. Furthermore, the decree sets a firm deadline for EPA to promulgate the regulations and guidelines at issue. Def.'s Mot. Attach. 1 ¶¶ 1–2. The decree contains provisions for modification of this deadline, including notice to the plaintiff and filing of the reasons for such modification with this court. *Id.* at ¶ 4. The decree contains dispute-resolution provisions, including a requirement that the parties "confer and attempt to reach an agreement on the disputed issue" prior to taking the dispute to the court. *Id.* at ¶ 5.

Finally, the court notes that the decree does not purport to modify EPA's preexisting duties under the CAA. Thus, because the proposed consent decree will insure that EPA moves forward in meeting CAA's requirements, the decree coincides with the congressionally-expressed public interest in reducing haze. For all these

reasons, the court holds that the consent decree is fair and in the public interest.

### b. Adequacy, Reasonableness, and Appropriateness

■■■■■ The factors for determining the adequacy, reasonableness and appropriateness of a consent decree focus on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal. *E.g., District of Columbia,* 933 F.Supp. 42 at 50; *Home Builders Ass'ns of Northern Cal. v. Norton,* 293 F.Supp.2d 1, 4–5 (D.D.C.2002). The role of the court in evaluating these factors, however, "is not to impose its own judgments as to how it would prosecute and resolve a particular case." *District of Columbia,* 933 F.Supp. 42 at 51. Rather, the court must determine whether the proposed consent decree is "reasonable from an objective point of view." *Id.*

The parties do not dispute the scope or purpose of the decree. They agree that the central issue in this case is EPA's alleged failure to promulgate the Guidelines Requirement and BART Requirement in accordance with §§ 7491 and 7492. Deft's Mot. Attach. 1 ¶ 1; Pl's Mot. to Enter Decree; Def.'s Mot. to Enter Decree at 1. The parties further agree that EPA's alleged failure to act violates a non-discretionary duty under § 7492(e)(1) to act within eighteen months of receiving the GCVTC report. Compl. ¶ 14; Def.'s Mem. in Support at 4. Finally, the parties agree that GCVTC issued its report in June 1996 and triggered EPA's requirement to promulgate the regulations at issue by December 1997. Compl. ¶ 17; Def.'s Supp. Mem. at 2.

The decree addresses EPA's alleged failure to act by establishing a new deadline by which EPA must promulgate in accordance with the Guidelines Requirement and BART Requirement. Def.'s

Mot. Attach. 1 ¶¶ 1–2. Because EPA's alleged failure to act is at the heart of the plaintiff's lawsuit and the decree is limited to establishing parameters for addressing that failure, the court determines that the decree is an adequate, reasonable and appropriate response to the central issue in this case. Furthermore, as indicated above, the court determines that the decree is fair and in the public interest. Accordingly, the court enters the decree.

## IV. CONCLUSION

For the foregoing reasons, the court denies the motion to intervene and grants the motion to enter consent decree. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2004.